In re The CHARTER COMPANY, et al., Debtors.

Bankruptcy Nos. 84–289–BK–J–GP to 84–332–BK–J–GP and 85–1033–BK–J–GP.

United States Bankruptcy Court, M.D. Florida, Jacksonville Division.

March 7, 1989.

See also, Bkrtcy., 93 B.R. 286.

**630**

E. Lanny Russell, Jacksonville, Fla., for Charter.

James J. Taylor, Jacksonville, Fla., for Lugano Group.

Thomas M. Baumer, Jacksonville, Fla., for American Transtech, Inc.

## MEMORANDUM OPINION

GEORGE L. PROCTOR, Bankruptcy Judge.

This case is before the Court upon the motion of Acafid AG Lugano, Maurice d'Moreno, Fortunee Moreno–Jtros, Kam Pui Man, Noemi J.R. Downes, Arzi Bank AG, Dan Andrei, and Bernhard Meiners, Jr. (the "Lugano Group"), to require American Transtech, Inc. (escrow agent), to make distributions pursuant to the Fourth Amended Joint Plan of Reorganization, or in the alternative, for an enlargement of time within which to surrender debenture certificates.

An evidentiary hearing on the motion was held December 16, 1988, and upon the stipulation of facts and after argument of counsel, the Court enters this Memorandum Opinion.

## FACTS

On April 20, 1984, The Charter Company ("Charter") and many of its subsidiaries filed petitions under Chapter 11 of the Bankruptcy Code. 11 U.S.C. § 101, *et seq.* On November 13, 1985, Charter International Finance N.V., another subsidiary, filed a Chapter 11 petition. Case No. 85–1033–BK–J–GP. By orders entered April 20, 1984, and November 14, 1985 (Second Order Providing for Joint Administration), these cases have been consolidated for administration.

On December 18, 1986, the Court entered an order confirming the Fourth Amended Joint Plan of Reorganization (the "Plan") submitted in each of these cases. Jurisdiction was reserved by the Court to "determine all controversies and disputes arising under, or in connection with, the Plan."

The terms and conditions of the Plan required each holder of debtor's stock and debenture securities to surrender certificates evidencing their ownership to American Transtech, Inc. ("American Transtech") debtor's escrow agent, within one year following the consummation date. The Plan's consummation date was March 31, 1987, and Notice of Consummation and Availability of Distributions was published on March 26, 27, and 31, 1987, in *The Wall Street Journal, Florida Times Union (Jacksonville),* and *The Luxemburger Wort.* Thus, the last day for holders of affected securities to surrender their certificates was March 31, 1988 (the "surrender date").

The members of the Lugano Group are beneficial owners of $239,000 aggregate principal amount of 8.25% convertible subordinated guaranteed debentures due 1994 (the "debentures") issued by Charter prior to the petition date.

As to this group of security holders, paragraph 2.8 of the Plan classifies their claims as "Class 6C–1 Claims." Paragraph 3.8 of the Plan provides that, with respect to the holders of Class 6C–1 Claims, cash and new debenture certificates issued by Charter (the "new debentures") would be distributed to tendering debenture holders in full satisfaction of their claims. Regarding such distribution, paragraph 4.5.3(k)(ii) of the Plan states:

> 4.5.3(k)(ii) *Surrender of certificates as condition precedent to entitlement to distribution.* As a condition precedent to the distribution by the Escrow Agent of any property to the holder of a Class ___ Claim [including Class 6C–1 Claims] with respect to such Claim, such holder

must first surrender his bond certificates evidencing such Class ___ Claim to the Escrow Agent in the manner and within such time periods as may be fixed in the Escrow Agreement. In the event a holder of a Class ___ Claim fails to surrender his bond certificates within one year after the Consummation Date in accordance with the procedures fixed in the Escrow Agreement, such holder shall not receive any distribution of property under the plan with respect to such Class ___ Claim.

According to the Plan, if a holder of a Class 6C–1 Claim failed to surrender his certificates within the time specified in paragraph 4.5.3(k)(ii), American Transtech is to liquidate the debentures which were to have been distributed to the non-tendering security holder and distribute the proceeds pro rata to those claim holders who timely surrendered their certificates.

The only information regarding delivery and surrender of the certificates is set forth in the "Letter of Transmittal" sent by American Transtech to Charter's security holders to assist them with the tendering of their certificates. This portion of the letter reads as follows:

Class 6C

LETTER OF TRANSMITTAL
for Charter International
Finance N.V.'s 8¼% Convertible
Subordinated Guaranteed Debentures due 1994

By Registered Mail:
AMERICAN TRANSTECH INC.
P.O. Box 45083
Jacksonville, Florida 32232

By Hand:
AMERICAN TRANSTECH INC.
8000 Baymeadows Road
Location # 5–2–131
Jacksonville, Florida 32216

or

22 Courtland Street
Building 30, Room 1043
New York, New York 10007

---

The reverse side of this document was not submitted into evidence. The evidence shows that in addition to registered mail and hand deliveries, American Transtech accepted certificates delivered by courier services.

The Euro-clear Operations Centre ("Euro-clear") is a clearing house for internationally traded securities and is headquartered in Brussels, Belgium. It is operated by Morgan Guaranty Trust Company of New York. Various financial institutions maintain accounts with Euro-clear, and the debentures owned by the Lugano Group were registered with this exchange.

The Lugano Group did not retain possession of the original debenture certificates but instead deposited the securities with Caisse d'Epargne de l'Etat, Luxembourg ("Caisse d'Epargne"), the depository bank which maintained physical possession of the securities.

On or about March 31, 1987, Euro-clear received notice that, pursuant to the Fourth Amended Joint Plan of Reorganization, owners of Charter's pre-petition debentures were to surrender their certificates to American Transtech by March 31, 1988, in order to participate in the distribution of new debenture certificates. On February 25, 1988, Euro-clear sent telexes to each of its members reminding them of the upcoming deadline and asking them to provide instructions as to their participation in the distribution.

During the first half of March, 1988, Caisse d'Epargne, acting on instructions from Euro-clear, mailed seven separate shipments of debenture certificates via registered air mail to American Transtech

from its Luxembourg office. The debenture certificates held by the Lugano Group were mailed in three separate shipments, two mailed on March 11, 1988, and the third mailed on March 16, 1988. Altogether, the three shipments included six packets of debenture certificates bearing serial numbers 37803 through 37823, 37864 through 38963, 47323 through 47438, 47456 and 47457, together with copies of six Caisse d'Epargne delivery instructions.

The delivery instructions identified the serial numbers of the certificates in each group, the party for whose Euro-clear account the certificates were being surrendered, the party in whose name the new debentures should be issued, and that party's address. The delivery instructions stated that the certificates were being "delivered to" American Transtech "for exchange into regd [registered] bonds."

The six original delivery instructions were mailed to American Transtech separately from the three shipments of certificates. American Transtech received five of the delivery instructions on March 21, 1988, and received the sixth on March 23, 1988. In addition, American Transtech received letters of transmittal for four of the six groups of certificates on or before March 31, 1988. However, American Transtech did not receive the three shipments containing the Lugano Group's actual certificates until April 4, 1988, the first business day after March 31, 1988.

Packages shipped by registered air mail from Luxembourg to Jacksonville, Florida, ordinarily take from five to eight days to be delivered. Thus, these three shipments should have been received by American Transtech at least one week prior to March 31, 1988.

From March 9 to March 30, 1988, Guido Devries, an employee of Euro-clear, contacted American Transtech by telephone every two or three days to confirm whether American Transtech had received the certificates mailed by Caisse d'Epargne. On March 30, 1988, Devries spoke on the telephone with Trudi Murray, an employee with American Transtech. She informed him that the Lugano Group's certificates had not been received.

Consequently, Devries sent Ms. Murray a telecopy listing of all the certificates Caisse d'Epargne had shipped to American Transtech, including those mailed on March 11 and March 16. The listing set forth the serial numbers of the certificates, the participating financial institutions in whose Euro-clear accounts the various certificates were registered, and the principal amount of debentures in each group listed. Ms. Murray confirmed American Transtech's receipt of the telecopier listing by telephone later that day.

On or about April 4, 1988, American Transtech notified Euro-clear that it did not have authority pursuant to the Plan to accept these certificates for surrender because they were not received prior to March 31, 1988. American Transtech did not liquidate, distribute or take other action with respect to the new debentures which were to be issued to the Lugano Group and continues to hold the debentures in escrow.

According to American Transtech, the following securities were not timely surrendered:

(1) 260,952 shares of common stock;

(2) 11,584 shares of common stock unclaimed by warrant holders who failed to surrender their certificates;

(3) Approximately $297,000 principal amount of Charter's 10⅝% Subordinated Debentures (Class 6B–1);

(4) Approximately $130,000 principal amount of Charter's 14¾% Subordinated Sinking Fund Debentures due 1994 (Class 6B–2);

(5) Approximately $532,000 of Charter's 8¼% Convertible Subordinated Guaranteed Debentures due 1994 (Class 6C);

(6) Approximately $750,000 of Charter's Gulf Coast Waste Disposal Authority Pollution Control Revenue Bonds (Class 6F).

## CONCLUSIONS OF LAW

The central issue raised by the present motion is whether the Court has discretion

to extend the date for tendering debenture certificates after the Plan has been confirmed. Charter argues that the Court lacks such authority because (i) only the proponent of the plan may modify a confirmed plan, (ii) that the members of the Lugano Group accepted the plan and are now bound by its provisions, and (iii) that extending the deadline will open the "floodgates" to further litigation and uncertainty.

■ The debtor first suggests that the movants are, in fact, asking for a modification of the Plan. Section 1127 of the Bankruptcy Code governs the post-confirmation modification of a plan. It states that the proponent of a confirmed plan may call for its modification any time prior to substantial consummation. Thus, according to the debtor, the Court lacks authority to modify the Plan because (i) the Plan's proponent [Charter] did not request a modification, and (ii) because the Plan has been substantially consummated. The Court agrees with this analysis.

Substantial consummation of the Plan was accomplished on March 31, 1987, or one year prior to the filing of the present motion. Secondly, the motion was not filed by the plan's proponent, Charter. Under § 1127 then, the Court cannot extend the deadline for surrendering the debenture certificates.

However, the Court does not find that the movants are seeking a modification of the Plan under § 1127. Instead, the Court is simply being asked to exercise its discretion to allow the movants to surrender their debenture certificates after the surrender date.

A number of cases reported prior to the enactment of the Bankruptcy Code suggest that the Court lacks the authority to extend a plan surrender deadline. For example, in *In re Industrial Office Building Corp.*, 108 F.Supp. 878 (D.N.J.1952), the confirmed plan of reorganization required the surrender of old certificates in order to obtain new securities in the reorganized company. Like these movants, the stockholder in that case failed to timely surrender its certificates. The Court held:

The earlier plan of reorganization was in fact a voluntary agreement to which all stockholders who accepted its terms and conditions became parties. This Court has no summary jurisdiction to alter or modify the agreement.

*Id.* at 882.

Similarly, in *In re City Stores Company*, 94 F.Supp. 266 (D.Del.1950), the Court stated:

The cases seem to hold that a court has no jurisdiction to extend the bar order.... However, in this case there is an equity against petitioner Stern in that the capital structure of the instant company has now been altered and adjusted under the assumption of a previously existing valid bar order of this court. To readjust capital structure every time a petitioner seeks to extend a bar period would, of course, result in chaos. It may be that other potential petitioners are as favorably situated as this petitioner and consequently the court would have to compel the Debtor to readjust constantly its capital structure. It is recognized that a court will not do this in any case where intervening rights of other stockholders have come into existence, as they have in the case at bar.

*Id.* at 268–269.

Another court construed former Bankruptcy Rule 10–405(b) [derived from § 204 of the Bankruptcy Act] to limit the bankruptcy court's discretion to alter the Plan's surrender date. Said the court:

[T]he clear intent is to fix a period of limitation within which any such creditor or stockholder may claim his distributive share or interest, so that the rights to unclaimed funds and securities may be definitely terminated.

*In re Grand Rapids R. Co.*, 28 F.Supp. 802, 803 (D.Mich.1939).

In *In re Reo Motor Car Co.*, 74 F.Supp. 142, 145 (D.Mich.1947), the court went a step further and said:

Stockholders of Reo Motor Car Company who failed to exchange their stock for that of Reo Motors, Inc., in accordance with the Plan of Reorganization and the

various orders and the final decree entered herein on October 7, 1940, have no further rights based upon such stock-holdings.

The Court does not find this to be binding precedent and will look elsewhere to avoid a substantial forfeiture.

Bankruptcy courts have traditionally been endowed with equitable powers which permit them to extend or reopen the time periods relating to the adjustment/allowance of claims for cause. Even those decisions which denied an enlargement of time in which to surrender certificates recognize this inherent power. For instance, in *North American Car Corporation v. Peerless W. & V.*, 143 F.2d 938 (2d Cir. 1944), the court stated:

> In general, questions of reopening time limits for the presentation or other adjustment of claims must rest very largely in the sound discretion of the court. . . .

*Id.* at 940. *See also, Industrial Office Building Corp., supra,* (standard applied is whether the option to surrender is exercised "within such reasonable time as would avoid prejudice to the rights of others").

The Court finds there was actual and/or constructive delivery of the debenture certificates to American Transtech prior to the surrender date. It is a general rule applicable to the transfer of instruments that:

> [F]rom the standpoint of parting with dominion and control, delivery is in legal contemplation complete when an instrument is deposited in the mail with the intent that it shall be transmitted to the payee in the usual way by the post office, which may be regarded as the common agent of both maker and payee. . . . Accordingly, in the usual case, execution may be deemed complete upon the deposit of the instrument in the mail.

11 Am.Jur.2d *Bills and Notes* § 277.

■ Because the Lugano Group's certificates were deposited in the mails on March 11 and March 16, 1988, with the intent that they be delivered to American Transtech by March 31, 1988, the Court finds that such mailing constitutes a timely surrender of the debenture certificates.

Even if mailing prior to the surrender date was insufficient to constitute *actual* delivery, there has been a timely *constructive* delivery of the certificates in this instance.

> A constructive delivery is sufficient if made with the intention of transferring the title, and the final test is whether the endorser did such acts in reference to the instrument as evidenced an unmistakable intention to pass title to the instrument and thereby relinquish all power and control over it.

11 Am.Jur.2d *Bills and Notes* § 368. *See also, City National Bank of Miami v. Wernick,* 368 So.2d 934 (Fla.3d DCA 1979); 23 Am.Jur.2d *Deeds* §§ 123, 124; 11 Am. Jur.2d *Bills and Notes* § 368.

The facts evidence a clear intention on the part of the Lugano Group to timely surrender their certificates and to relinquish all dominion and control over them to American Transtech. Specifically, the Court finds that (i) the Lugano Group relinquished control of the certificates to the postal authorities for delivery to American Transtech prior to March 31, 1988, (ii) Euro-clear debited the accounts in which the Lugano Group's debentures had been registered, (iii) the delivery instructions delivered to American Transtech identified the certificates by serial number and set forth the names of the parties to whom the new debentures were to be issued, (iv) letters of transmittal were received by American Transtech for a majority of the certificates prior to the surrender date, (v) numerous telephone calls were made to American Transtech throughout the month of March in an effort to confirm delivery, and (vi) a telecopy listing of the certificate numbers, principal amounts and names of the debenture certificate holders was sent to American Transtech by Caisse d'Epargne prior to the surrender deadline.

The Court has balanced the equities and finds that the movants are entitled to an extension of time in which to surrender their debenture certificates. Consideration has been given to the fact that the movants

substantially complied with the terms of the Plan, that American Transtech had knowledge prior to the surrender date that the certificates were forthcoming, and to the relative harm to the debtor which will result by extending the surrender date in this instance.

Contrary to debtor's assertions, the Court finds that the extension of time given to the Lugano Group will not open the "floodgates" to further litigation or uncertainty. The extent of further litigation and uncertainty is limited primarily by three factors. First, the potential number of claims is limited to those security holders who failed to timely surrender their certificates. The evidence indicates that only $532,000 in Class 6C–1 Claims remain outstanding, 45 percent of which are held by the members of the Lugano Group. Furthermore, debtor has knowledge of the remaining claimants and may decide to take some further action.

Secondly, it may be that the doctrine of "laches" will ultimately attach to those security holders who did not timely tender their certificates or move for an extension of time in which to do so. Without indicating the point where "laches" will apply, the Court finds that the Lugano Group's motion is not barred by this doctrine.

Finally, § 1143 of the Code sets forth the outermost time limit in which security holders can ask for permission to surrender their stock and debenture certificates. It provides:

> If a plan requires presentment or surrender of a security or the performance of any other act as a condition to participation in distribution under the plan, such action shall be taken not later than five years after the date of the entry of the order of confirmation. Any entity that has not within such time presented or surrendered such entity's security or taken any such other action that the plan requires may not participate in distribution under the plan.

Thus, at the extreme, Charter and American Transtech can rely on December 18, 1991, as being the last date on which debenture holders may surrender their certificates. While this delay in distribution may be unfortunate, the Court does not find the delay alone justifies the termination of the movant's rights.

The Court will, by separate order, enlarge the time period in which the members of the Lugano Group may surrender their debenture certificates.

ORDER GRANTING MOTION FOR AN ORDER DIRECTING AMERICAN TRANSTECH, INC., TO MAKE DISTRIBUTIONS PURSUANT TO THE FOURTH AMENDED JOINT PLAN OF REORGANIZATION, OR IN THE ALTERNATIVE, FOR AN ENLARGEMENT OF TIME WITHIN WHICH TO SURRENDER DEBENTURE CERTIFICATES

Upon the Memorandum Opinion separately entered, it is ORDERED as follows:

1. The Motion of Acafid AG Lugano, Maurice d'Moreno, Fortunee Moreno–Jtros, Kam Pui Man, Noemi J.R. Downes, Arzi Bank AG, Dan Andrei, and Bernhard Meiners, Jr. (the "Lugano Group") for an Order Directing American Transtech, Inc., to Make Distributions Pursuant to the Fourth Amended Joint Plan of Reorganization, or in the Alternative, for an Enlargement of Time Within Which to Surrender Debenture Certificates is GRANTED.

2. The Lugano Group shall have until March 24, 1989, in which to surrender their debenture certificates.

3. American Transtech is directed to (i) accept for surrender those 8.25% convertible subordinated guaranteed debentures due 1994 issued by Charter International Finance, N.V., to the movants and evidenced by the certificates bearing serial numbers 37803 through 37823, 37684 through 38963, 47323 through 47438, 47456 and 47457, and (ii) to distribute the property which the Plan provides will be distributed on account of such surrender.