In re Charles Simpson CHRISTOPHER,
Debtor.

Charles Simpson CHRISTOPHER,
Plaintiff,

v.

AMERICAN UNIVERSAL INSURANCE
GROUP, INC., Chromalloy American
Corporation, Chromalloy American In-
surance Group, Inc., Diamond Benefits
Life Insurance Company, Lawrence J.
Warfield, Special Deputy Receiver, Hill
Top Developers, Inc., One Hundred
Thirteen Corporation, Wayne Reeder,
et ux., Sammy Jo Reeder, Resolute
Holdings, Inc., RHI Holdings, Inc., and
Sequa Corporation, Defendants.

Bankruptcy No. 587–50621–11.
Adv. No. 591–5039.

United States Bankruptcy Court,
N.D. Texas,
Lubbock Division.

Dec. 30, 1992.

Philip I. Palmer, Jr., Palmer & Palmer, P.C., Dallas, TX, for Charles S. Christopher.

Charles K. Ayers, Ayers & Brown, P.C., Phoenix, AZ, for Diamond Benefits Group.

James D. Piel, Herbert, Adams, Crawford & Atwood, L.L.P., Dallas, TX.

King Waters, Womble & Spain, Houston, TX, Irena M. Goldstein, LeBoeuf, Lamb, Leiby & MacRae, New York City, for Sequa Group.

Stacey Cowand Jernigan, Haynes & Boone, L.L.P., Dallas, TX, for RHI Group.

Russell F. Nelms, Carrington, Coleman, Sloman & Blumenthal, L.L.P., Dallas, TX, for AUIC Group.

## MEMORANDUM OF OPINION ON DEBTOR'S MOTION TO AVOID CLAIMS

JOHN C. AKARD, Bankruptcy Judge.

Charles S. Christopher (Debtor) filed this adversary proceeding seeking a declaration that certain claims asserted in lawsuits against him were discharged by Bankruptcy Code § 1141(d).[1] The principal question for decision is whether an individual chapter 11 debtor must give formal notice of his bankruptcy proceedings to a post-petition, pre-confirmation creditor.[2] Finding that there is no requirement of formal notice and that the claimants had actual knowledge of the Debtor's bankruptcy, the court finds that the claims were discharged.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Overview

The Debtor filed for reorganization under Chapter 11 of the Bankruptcy Code on September 9, 1987. The court confirmed the Debtor's plan on August 24, 1989.

Postpetition, but preconfirmation, the Debtor joined a small investment group which subsequently established Resolute Holding Company (RHI). RHI was formed to acquire and operate existing insurance companies. RHI acquired Diamond Benefits Life Insurance Company (which operated in Arizona) in 1987 or early 1988. RHI acquired Chromalloy American Insurance Group, Inc. (Chromalloy) and its insurance subsidiary, American Universal Insurance Company (AUIC), (which operated in Rhode Island) from Sequa Corporation (Sequa) on May 27, 1988. RHI's acquisition of Chromalloy and AUIC involved a complex series of financial transactions between RHI, Sequa, Chromalloy, AUIC, the Debtor, and certain other subsidiaries and affiliates of these entities. The details of these transactions formed the basis of three lawsuits against the Debtor.[3] In 1989, the Sequa

---

1. The Bankruptcy Code is 11 U.S.C. § 101 *et seq.* References to section numbers are references to sections in the Bankruptcy Code. Section 1141(d)(1)(A) provides in pertinent part:

   ... the confirmation of a plan—
   (A) discharges the debtor from any debt that arose before the date of such confirmation, and any debt of a kind specified in section 502(g), 502(h), or 502(i) of this title, whether or not—
      (i) a proof of the claim based on such debt is filed or deemed filed under section 501 of this title;
      (ii) such claim is allowed under section 502 of this title; or
      (iii) the holder of such claim has accepted the plan ...

2. This court has jurisdiction over this matter under 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and Miscellaneous Rule No. 33 of the Northern District of Texas contained in Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc dated August 3, 1984. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B), (I), (L) and (O).

3. The Defendants in this proceeding aligned themselves into four groups: 1) the Sequa Group; 2) the RHI Group; 3) the American Universal Insurance Group (AUIC); and 4) the Diamond Benefits Group. They are collectively referred to as the Adversary Defendants. The Sequa Group consists of Sequa Corporation, Chromalloy American Corporation, Chromalloy American Insurance Company, and Chromalloy American Insurance Group, Inc. The RHI Group consists of RHI Holdings, Inc., Resolute Holdings, Inc., Hill Top Developers, Inc., One Hundred Thirteen Corporation, Wayne Reeder, and Sammy Jo Reeder. The American Univer-

Group filed suit in New York against the Debtor and the RHI Group. After confirmation, the Diamond Benefits Receiver filed suit in Arizona against the Debtor, the RHI Group, and others. In that suit, the RHI Group filed cross-claims against the Debtor. Most recently, the AUIC Receiver filed suit in Rhode Island against the Debtor, the RHI Group, and the Sequa Group. In all three lawsuits, the Adversary Defendants alleged that the Debtor looted the newly acquired insurance companies through negligence, mismanagement, fraud, and breach of fiduciary duty. The Debtor is participating in all three lawsuits.

In this action, the Debtor seeks a declaration from the court that all of these postpetition, preconfirmation claims were discharged by the Debtor's August 24, 1989 confirmation order. The Adversary Defendants received no formal notice of any of the proceedings in the Debtor's bankruptcy case. Nevertheless, the evidence supports a finding of actual notice to each group, except Diamond Benefits.[4]

### B. Notice Facts

#### 1. The Sequa Group

In 1987, the Sequa Group began discussing the sale of AUIC to the Debtor's investor group. The investor group included the Debtor, Wayne Reeder, and RHI. Eventually, RHI emerged as the investor entity. In December 1987, while the purchase negotiations were in their initial stages, the Debtor's bankruptcy was discussed in a meeting involving Gerald Gutterman, Sequa's Executive Vice President. A specific topic of discussion was the propriety of the Debtor's participation in the buyer group because of his bankruptcy.

On January 26, 1988, Chromalloy's vice president wrote RHI regarding RHI's offer to purchase AUIC. The letter referenced a recent meeting with the Rhode Island Insurance Commissioner regarding the sale of AUIC to RHI, and the Debtor's September 1987 bankruptcy. The letter requested that RHI amend its filings regarding its purchase offer for AUIC to include formal disclosure of the Debtor's bankruptcy.

#### 2. The RHI Group

Wayne Reeder was RHI's primary principal. The Debtor was an officer, director, and a minority shareholder in RHI. Carlton Burtt, president of RHI, attended the December 1987 meeting regarding RHI's purchase of AUIC, where the Debtor's bankruptcy was specifically discussed. A specific topic of discussion was the propriety of the Debtor's participation in the buyer group because of his bankruptcy.

RHI received the January 26, 1988, letter from Chromalloy's vice president regarding RHI's offer to purchase AUIC. As discussed above, the letter referenced a recent meeting with the Rhode Island Insurance Commissioner regarding the sale of AUIC to RHI, and the Debtor's September, 1987 bankruptcy. The letter requested that RHI amend its filings regarding its purchase offer for AUIC to include formal disclosure of the Debtor's bankruptcy.

#### 3. The American Universal Insurance Group

On May 27, 1988 RHI purchased AUIC from the Sequa Group. The Debtor became Chief Executive Officer of AUIC, a post he held for approximately three months. On September 2, 1988, the Debtor resigned as an officer and director of AUIC, RHI, and Diamond Benefits in a management dispute with the RHI Group.[5]

sal Insurance Group consists of American Universal Insurance Group, Inc., American Universal Insurance Company and Sheldon Whitehouse, Receiver for American Universal Insurance Company. The Diamond Benefits Group consists of Diamond Benefits Life Insurance Company and Lawrence J. Warfield, Special Deputy Receiver of Diamond Benefits Life Insurance Company.

**4.** At the close of the Debtor's case, Diamond Benefits moved for judgment. The court found

that the Receiver for Diamond Benefits had no notice or knowledge of the bankruptcy and, accordingly, granted judgment for the Receiver. The RHI Group's cross-claims were not included in that judgment and will be addressed in this opinion.

**5.** The Debtor was an officer and director of Diamond Benefits from May 1988 until his resignation on September 2, 1988.

In late September, 1988, the State of Rhode Island placed AUIC in receivership. Thereafter, AUIC's Receiver entered an appearance in the Debtor's bankruptcy. Negotiations between AUIC's Receiver and the Debtor culminated in an agreement, embodied in a "term sheet," which was attached to an amended disclosure statement. The plan was amended after the drafting of the term sheet. AUIC supported the Debtor's amended plan which the court confirmed on August 24, 1989. Accordingly, AUIC does not dispute that it received notice of the bankruptcy proceedings.

## II. POSITIONS OF THE PARTIES

The Debtor argued that the Adversary Defendants had actual notice of the Debtor's bankruptcy, and that actual notice is sufficient notice to postpetition, preconfirmation creditors where the debtor is an individual debtor. In response, the Adversary Defendants argued: 1) that an order discharging their claims would violate Constitutional Due Process because they did not receive sufficient notice that their claims were being discharged under the Plan; 2) that the Debtor cannot obtain relief from an equity court because the Debtor has unclean hands; and 3) that the Debtor is estopped and has waived his right to assert that the plan discharged their claims. AUIC contended that its rights, as they were negotiated in the term sheet, were unjustly impaired under the Debtor's plan. Accordingly, AUIC argued that, with regard to AUIC, the Debtor is judicially and equitably estopped from taking a position contrary to the term sheet.

## III. DISCUSSION

### A. Notice

■ There is no requirement in the Bankruptcy Code or Rules for a debtor-in-possession to serve a notice of the Chapter 11 proceedings upon parties with whom it

deals postpetition. A Chapter 11 filing is a matter of public knowledge which is recorded by credit reporting agencies and is often published in periodicals. The United States Trustee's requirement that the phrase "debtor-in-possession" appear on the debtor's checks is the closest thing to a notice requirement.[6] Nevertheless, where a creditor's rights are being adjudicated, constitutional due process carries with it the concept of adequate notice to the creditor. *See, e.g., Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 (1950).

■ RHI and Sequa, postpetition creditors, were never served by the Debtor with formal notice of the relevant proceedings in his bankruptcy case. Accordingly, RHI and Sequa contend that discharge of their claims violates constitutional due process. RHI and Sequa rely primarily on favorable language in *City of New York v. New York, New Haven & Hartford R.R.*, 344 U.S. 293, 73 S.Ct. 299, 97 L.Ed. 333 (1953), *Reliable Elec. Co. v. Olson Constr. Co.*, 726 F.2d 620 (10th Cir.1984), *Spring Valley Farms, Inc. v. Crow (In re Spring Valley Farms, Inc.)*, 863 F.2d 832 (11th Cir.1989), and *Dalton Dev. Project v. Unsecured Creditors Comm. (In re Unioil)*, 948 F.2d 678 (10th Cir.1991) for the proposition that a creditor with knowledge of a debtor's chapter 11 reorganization proceeding has no duty to inquire as to whether or not the creditor's claims are being discharged.

However, all cases cited by RHI and Sequa deal with prepetition creditors and corporate debtors. Those cases do not decide the issue of what notice is required by an individual debtor to a postpetition creditor. With an individual debtor, rather than a corporate debtor, § 1141(d)(2) applies so that confirmation of the plan does not discharge an individual debtor from any debt excepted from discharge under § 523.[7]

---

**6.** The lack of a requirement for notice by a debtor-in-possession does not seem to be a Congressional oversight, but rather an acknowledgement of commercial realities. It is reasonable to expect that a person who enters into a commercial transaction would make an investigation into the person or business with whom it

plans to deal. Information concerning filing a Chapter 11 petition is readily available from credit reporting agencies and similar sources as well as from parties with whom the debtor has previously dealt.

**7.** Section 1141(d)(2) provides:

Section 523, in turn, bars the discharge of unscheduled creditors unless they have notice or actual knowledge of the case.

The distinction between corporate debtors and individual debtors, for notice purposes, was held critical in *Spring Valley Farms, Inc., supra.* The case involved a corporate debtor which deliberately left a prepetition creditor off its schedules. After confirmation, the debtor asserted the § 1141 discharge. The debtor relied heavily on the Eleventh Circuit's decision in *Byrd v. Alton (In re Alton)*, 837 F.2d 457 (11th Cir.1988), another chapter 11 case with a prepetition, unscheduled claimant. Significantly, the Eleventh Circuit distinguished its earlier decision because the debtor in *Alton* was an individual, so that § 523 was applicable.[8] 863 F.2d at 833–34. For an individual chapter 11 debtor, then, actual notice is the due process afforded postpetition, preconfirmation creditors.[9]

### B. Unclean Hands

■ Sequa contends that the Debtor cannot obtain relief from an equity court because the Debtor has unclean hands. The "clean hands" maxim instructs that one seeking equity must come to court with clear conscience and in good faith, *i.e.*, with

his own hands clean. *Truman v. Deason (In re Niland)*, 825 F.2d 801, 812 (5th Cir.1987). Sequa asserted that the Debtor acted in bad faith because he actively participated in a lawsuit filed against him while at the same time he concealed his attempts to bar Sequa's claims in bankruptcy court. This argument is not persuasive because the Debtor did not owe any duty of candor to Sequa. As discussed, neither the Bankruptcy Code nor Rules required a debtor-in-possession to serve notice of the chapter 11 proceedings upon parties with whom it deals postpetition, and Sequa had actual knowledge of the Debtor's bankruptcy.

■ The court notes that another maxim of equity applies in this case: "Equity aids the vigilant, not those who slumber on their rights." 30 C.J.S. *Equity* § 100 (1965). Both RHI and Sequa had actual knowledge of the bankruptcy proceeding, and they were on notice of the ramifications of nonparticipation.

### C. Equitable Estoppel and Waiver

■ Contrary to RHI's and Sequa's assertions, equitable estoppel does not apply in this case. The first element of the

The confirmation of a plan does not discharge an individual debtor from any debt excepted from discharge under section 523 of this title. *Section 523 provides in pertinent part:* A discharge under section ... 1141 ... of this title does not discharge an individual debtor from any debt ... neither listed or scheduled ... unless such creditor had *notice* or actual knowledge of the case in time for such timely filing. (emphasis added).

**8.** Referring to section 523, the *Alton* court said: The statutory language clearly contemplates that mere knowledge of a pending bankruptcy proceeding is sufficient to bar the claim of a creditor who took no action, whether or not that creditor received official notice from the court of various pertinent dates. This furthers the bankruptcy policy of affording a "fresh start" to the debtor by preventing a creditor, who know of a proceeding but who did not receive formal notification, from standing back, allowing the bankruptcy action to proceed without adjudication of his claim, and then asserting that the debt owed him is undischargeable. 837 F.2d at 460.

**9.** *In re Turning Point Lounge, Ltd.*, 111 B.R. 44 (Bankr.W.D.N.Y.1990), considered the effect of

a confirmed plan on a creditor with actual knowledge of a corporate debtor's bankruptcy. Finding that actual knowledge was insufficient in the case of a corporate debtor, the court noted a different result in the case of an individual debtor under section 523(a)(3). 111 B.R. at 48 n. 3.

In *United States (SBA) v. Bridges*, 894 F.2d 108 (5th Cir.1990), the Fifth Circuit recognized the distinction, for notice requirements, between corporate debtors and individual debtors. The corporate debtor scheduled the SBA, but the individual debtor did not. While one office of the SBA had actual notice of the individual debtor's filing, it was not the office which handled the individual debtor's guarantee. After the two debtors confirmed a joint plan, the individual debtor sought to discharge the SBA debt from his personal debt. Significantly, the court only examined "actual notice." The court made no mention of "formal notice." The obvious implication to draw from *Bridges* is that actual notice would have been sufficient had it been found. In the present case, the Adversary Defendants do not seriously dispute that they had actual notice.

equitable estoppel doctrine is lacking; the Debtor made no material misrepresentation or concealment regarding his bankruptcy proceeding.[10] Similarly, Sequa's contention that the Debtor is precluded from asserting that its claims were discharged in bankruptcy because of waiver is misplaced. Sequa argues that by his decision to litigate the state court claims against him, the Debtor waived his right to seek a bankruptcy discharge of the same claim.[11] However, the Debtor's litigation of the state court claims against him did not evidence an actual intent to relinquish the Debtor's right to discharge of the state court claims.

### D. The Plan is Res Judicata

■ A strong policy favors enforcement of the plan of reorganization because too many rights of too many interests have relied on the finality of the confirmation order. All questions which could have been raised are foreclosed by res judicata. *Republic Supply Co. v. Shoaf (In re Republic Supply Co.)*, 815 F.2d 1046 (5th Cir.1987) and *Miller v. Meinhard–Commercial Corp.*, 462 F.2d 358 (5th Cir.1972). Once the plan is confirmed, the property rights of many of these interests are adjusted thereby creating a new status which is important to preserve.

At hearing, the parties introduced no evidence to show the effect, if any, of the allowance of the claims of RHI and Sequa upon the creditors provided for in the Debtor's Plan of Reorganization. No evidence was presented to show that the Plan creditors were served with notice of the proceeding. If the court allowed the claims of RHI and Sequa, there is the potential for a substantial adverse impact on the result for which the Plan creditors bargained. This court cannot destroy those bargained-for

rights without due process—the very reason which these groups advocate to support their positions. If the court must chose between RHI and Sequa, both of which had notice of the bankruptcy proceedings and chose not to participate, and the Plan creditors whose rights are potentially materially adversely affected without a hint of due process, the court must choose the latter.

■ AUIC contended that its rights, as they were negotiated in the term sheet, were unjustly impaired under the Debtor's plan. Accordingly, AUIC argues that, with regard to AUIC, the Debtor is judicially and equitably estopped from taking a position contrary to the term sheet. In response, the Debtor argued that AUIC voted for the plan and, if AUIC had an objection, the objection should have been made in time to allow other creditors to react.

Competent counsel represented the AUIC Receiver in the bankruptcy proceedings. If AUIC felt that the plan did not reflect the agreement of the parties, AUIC had ample time to object. Although it is unfortunate that the attorney who represented the Debtor in those negotiations and who drafted the amended plan is deceased; nevertheless, AUIC voted for the plan. It was the plan, not the supplement to the disclosure statement, which the court confirmed. Because no party appealed the confirmed plan, it is binding on both AUIC and the Debtor. *Republic Supply Co., supra.*

### III. CONCLUSION

AUIC, Sequa and RHI protested that the Debtor stole millions of dollars from them and that this court should not allow that to

---

10. Equitable estoppel requires:
  (1) a material misrepresentation (or concealment)
  (2) made with actual or constructive knowledge of the true facts
  (3) with intent that the misrepresentation be acted upon by
  (4) a party without knowledge or means of knowledge of the true facts,
  (5) who detrimentally relies or acts on the misrepresentation.

*Neiman–Marcus Group, Inc. v. Dworkin*, 919 F.2d 368, 371 n. 4. (5th Cir.1990) (citation omitted).

11. Waiver is established where there is:
  (1) an existing right, benefit, or advantage;
  (2) actual or constructive knowledge of its existence; and
  (3) actual intent to relinquish the right, which can be inferred from conduct.

*First Interstate Bank v. Interfund Corp.*, 924 F.2d 588, 595 (5th Cir.1991) (citation omitted).

go unpunished, at least without giving them the opportunity to assert their allegations in a civil trial. First, the court notes that its decision does not preclude a criminal action if that is appropriate. Second, and more important to this case, this court is obligated to rule upon the law as it perceives the law to be. The court cannot allow the facts of a particular case, however appealing, to sway it from the path along which the law directs it. *See*, e.g., *In re Page*, 118 B.R. 456 (Bankr.N.D.Tex. 1990) (holding that a debtor who became disabled postconfirmation is nonetheless bound by the terms of a confirmed Chapter 11 plan). Accordingly, the court holds that all preconfirmation claims of AUIC, the Sequa Group and the RHI Group are discharged except to the extent to which the plan provides. The discharge of preconfirmation claims includes any claims for contribution or indemnity which the RHI group seeks to assert in other suits.[12]

JUDGMENT ACCORDINGLY.[13]

**12.** This court agrees with the Eleventh Circuit in *Alton, supra,* when it said:

Appellant emphasizes these harsh facts. "We agree that this is a hard case, but we cannot agree that it should be allowed to make bad law." *FCC v. Woko, Inc.,* 329 U.S. 223, 229, 67 S.Ct. 213, 216, 91 L.Ed. 204 (1946) (Jackson, J.). Despite the misleading actions, inadvertent or intentional, of debtor Alton, the time specifications set out in the Bankruptcy Code

are sufficiently clear to have placed an obligation on creditor Byrd to follow the case and to take the timely action necessary to pursue his claim.

837 F.2d at 459.

**13.** This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052. This Memorandum will be published.