**In re AMERICAN BODY ARMOR & EQUIPMENT, INC., Debtor.**

**Bankruptcy No. 92–3096–BKC–3P1.**

United States Bankruptcy Court,
M.D. Florida,
Jacksonville Division.

July 25, 1994.

George E. Ridge, Jacksonville, FL, for debtor.

Betsy Cox Mahin, Jacksonville, FL, for Osprey.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

GEORGE L. PROCTOR, Bankruptcy Judge.

This case came before the Court upon motion of Osprey International, Ltd. ("Osprey") to permit election of stock. The Court held a hearing on the motion on March 17, 1994. Upon the evidence presented, the Court enters these findings of fact and conclusions of law:

### Findings of Fact

Osprey filed an unsecured claim in the amount of $193,382.21. Debtor and Osprey had discussions concerning the amount of the claim and plan acceptance but failed to reach an agreement regarding the amount of the claim, any potential objection to claim, or acceptance of debtor's proposed plan prior to the confirmation hearing held August 24, 1993, and August 30, 1993. Debtor last

spoke with Osprey concerning a possible agreement on June 3, 1993.

As an unsecured creditor, Osprey was a member of class 6. Debtor's plan addressed treatment of class 6, unsecured claims, in paragraph 5.04 which states:

Treatment of General Unsecured Claims. Each holder of a Class 6 claim may elect to receive either (i) a Cash payment in an amount not to exceed the lesser of $7,500 or 25% of the amount of such holder's Allowed Claim (the "Cash Option"); or (ii) such holder's pro rata share (based on the Allowed amount of such Class 6 claim) of (a) Preferred Stock, and (b) Additional Common Stock. Failure to elect Preferred and Additional Common Stock will constitute an election of the Cash Option. Class 6 Claims are impaired.

The disclosure statement also states that failure to elect the preferred and common stock option constitutes election of the cash option. Paragraph IX point 6 states in relevant part:

6. *Treatment of Unsecured Claims*

The Company has preliminarily estimated the aggregate amount of the Allowed Unsecured Claims, including unliquidated, contingent and Disputed Claims to be $6,400,000. Each holder of a Class 6 claim may elect to receive either (i) a Cash payment in an amount not to exceed the lesser of $7,500 or 25% of the amount of such holder's Allowed Claim (the "Cash Option"); or (ii) such holder's pro rata share (based on the Allowed Amount of such Class 6 claim) of (a) Preferred Stock, and (b) Additional Common Stock. Failure to elect Preferred and Additional Common Stock will constitute an election of the Cash Option. This Plan contemplates issuance to holders of Class 6 claims 100% of the 1,700,000 shares of $1.00 per share attributed value Preferred Stock ($1.00 stated value per share) and 70% of the 4,415,833 or 3,091,083 shares of $1.16 per share attributed value Common Stock ($.03 par value per share).…

By way of example, a Class 6 Claim in the amount of $50,000 would receive … [I]n the event that the amount of claims settled by the issuance of Preferred Stock and Additional Common Stock is more than $5.3 million, the holder of the $50,000 claim would receive a smaller allocation of Preferred Stock and Additional Common Stock, thereby increasing the attributed per share reorganization value. Failure to elect a combination of Preferred Stock and Additional Common Stock will constitute an election of the Cash Option. Class 6 is impaired.

The ballot form sent to each class 6 creditor, including Osprey, contained three voting options: 1) accept the plan and elect the cash option; 2) accept the plan and elect the stock option; 3) reject the plan. The Court approved the disclosure statement on May 13, 1993, and set July 22, 1993, as the last day to vote to accept or reject the plan.

Article XI of the plan addresses the effect of failure to receive acceptance from all classes of claimants and specifically class 6 unsecured claims. Article XI states in relevant part:

If the Class 6 claims do not accept the Plan in accordance with Bankruptcy Code Section 1126(c), then (i) the holders of any claim or interest junior to Class 6 will be treated in accordance with Bankruptcy Code Section 1129(b)(2)(B)(ii), and (ii) the Old Common Stock of the Debtor will be canceled.

Osprey did not object to the disclosure statement or plan. Osprey did not vote to accept or reject the plan.

After confirmation, on October 6, 1993, Osprey's former counsel called debtor's counsel to determine how to elect stock. Debtor's counsel advised counsel for Osprey that it was too late to elect stock, that the stock was at that time being printed. Pursuant to the cash option, debtor sent Osprey a check for $7,500.00 which Osprey returned to debtor. Osprey filed this motion November 9, 1993.

*Conclusions of Law*

The dispute in this case centers around the election of stock or cash for unsecured creditors and specifically when this election could be made. Osprey argues that its interpreta-

tion of the procedure for implementing the election, allowing the election to be made post-confirmation by creditors who either did not vote or voted against the plan, is reasonable and that the failure to allow it to make the election created in the plan post-confirmation deprives it of the right without notice. Debtor, on the other hand, counters that this Court does not have jurisdiction to authorize an election and that Osprey is attempting to modify the confirmed plan. In the alternative, debtor argues that even if the Court has jurisdiction Osprey's motion is moot.

## JURISDICTION

The initial question then is whether the Court has jurisdiction to decide this controversy. The Court retains only limited post-confirmation jurisdiction. *In re A.R.E. Manufacturing Co., Inc.,* 138 B.R. 996 (Bankr.M.D.Fla.1992). It is well-settled, however, that the bankruptcy court may retain jurisdiction through a specific reservation in the plan. *Id.* at 999.

### Plan Reservation

Debtor's plan provides for retention of jurisdiction by the Court for the following relevant purposes:

7. To consider any modifications of the Plan in accordance with 1127 of the Bankruptcy Code.

8. To determine all controversies, suits and disputes that may arise in the interpretation and enforcement of the Plan;

9. To correct any defect, cure any omission, or reconcile any inconsistency in this Plan or the Confirmation Order as may be necessary to effectuate the purposes and intent of this Plan;

10. To enforce or interpret the terms and conditions of this Plan;

11. To enter any order or injunction necessary to enforce the title, the rights and powers of the Debtor, or any other parties in interest under this Plan; and

12. To determine any other matter for which jurisdiction may be retained.

This is a question of interpretation and does not involve modification of the plan. Both the plan and disclosure statement state that failure to elect stock constitutes election of the cash option. However, the plan does not address how to make the election. Because the mechanics of the election are not addressed in the plan, the question is one of interpreting an omission. The question of when the default cash option takes effect is an interpretation issue, because the plan states that failure to elect constitutes election of the cash option and is subject to interpretation. Accordingly, the Court has jurisdiction pursuant to article XIV points 9 and 10 and may proceed to address the merits of the dispute.

### Mootness

The Eleventh Circuit has held that mootness applies in bankruptcy. *In re Miami Center Limited Partnership,* 838 F.2d 1547 (11th Cir.1988). In bankruptcy, the mootness doctrine recognizes that at some point the case has progressed so far that it is impossible to unwind all that has been done. Central to the mootness inquiry is the question whether the Court is able to provide effective relief or whether the plan has been so substantially consummated that effective relief is no longer available. *In re Miami Center Limited Partnership,* 838 F.2d 1547; *In re Club Associates,* 956 F.2d 1065 (11th Cir.1992). Substantial consummation alone is not sufficient to satisfy the mootness inquiry. Additional factors the Court may consider include: 1) interests of finality; 2) passage of time; 3) whether there has been a comprehensive change in circumstances; 4) whether a stay been obtained; 5) if not, why not; 6) what type of transactions have been consummated; 7) type of relief sought; 8) effect of granting relief on third parties not before the Court; 9) threat to re-emergence of debtor as revitalized entity. *In re Miami Center Ltd. Partnership,* 838 F.2d 1547; *In re Club Associates,* 956 F.2d 1065 n. 11. The Code defines substantial consummation in § 1101 which states in relevant part:

In this chapter

(2) "substantial consummation" means

(A) transfer of all or substantially all of the property proposed by the plan to be transferred;

(B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and

(C) commencement of distribution under the plan.

■ Scant evidence of substantial consummation was presented, however, the Court finds that the plan has been substantially consummated. The plan provides for distribution of stock as soon as practicable after the effective date of the plan. The Court received testimony that all 1,700,000 shares of preferred stock authorized by the plan and the elected common stock had been distributed. The cash option checks were distributed to class 6 creditors subsequent to the stock distribution. Osprey received its cash option check in December, 1993. Thus distribution under the plan has begun.

Osprey argues that effective relief is available because it will accept the value of its claim in common stock instead of a combination of preferred and common stock. Osprey correctly states that the plan authorizes millions of shares of common stock which have not been issued and which are not required to be issued to implement the plan. However, because preferred stock is no longer available, it is not possible to enforce the plan election as written. The Court has the authority to interpret and enforce the plan, but because this is no longer possible, the Court is unable to provide a remedy consistent with the plan election or effective relief to Osprey.

It is clear that once a plan has been confirmed the law favors finality of confirmation. Section 1141 states that except when the debt would be excepted from discharge or a discharge denied "the provisions of a confirmed plan bind the debtor, ... and any creditor, ... whether or not the claim or interest of such creditor, ... is impaired under the plan and whether or not such creditor ... has accepted such plan." Section 1141(b) vests all property of the estate[1]

in the debtor unless specifically provided in the plan or order confirming the plan. In addition to the policy contained in § 1141, the policies of enforcement and finality of the plan are favored because the rights of others are determined by and depend upon the plan. *In re Christopher,* 148 B.R. 832 (Bankr.ND. Tex.1992).

Another factor the Court may consider is the amount of time that has passed. Here, the plan was confirmed in open Court on August 30, 1993. The confirmation order was entered on September 8, 1993, and the effective date of the plan was September 21, 1993. Osprey contacted debtor's attorney on October 6, 1993, to make the stock election and filed this motion on November 9, 1993. Although the time that has passed is short, the appeal time has run and no appeal was filed. Consequently, there has not been a stay pending appeal nor has Osprey moved for a stay of the confirmation order or implementation of the plan.

In addition, issuing stock to Osprey would adversely affect the interests of third parties who are not before the Court. The value per share of stock elected by other class 6 creditors will decrease if Osprey is issued common stock, because the value per share depends on the number of shares issued. Osprey argues that any such consequence on value would be de minimis. Although this may be correct, issuing stock to Osprey would adversely affect other class 6 creditors. Given the mootness factors considered and the Court's inability to provide effective relief, the Court holds that Osprey's motion is moot.

### MERITS

■ Even though the Court finds that Osprey's motion is moot, the Court finds that it is appropriate to consider the merits of the motion. Osprey argues that neither the disclosure statement, plan, or ballot form provided notice that the stock election could be made only via the ballot.

---

1. Osprey argues that the stock is not property of the estate and did not revest in debtor while debtor argues that the stock revested and the Court is without authority to require debtor to issue stock to Osprey. The Court has considered this argument and finds it unnecessary to determine whether the stock is property of the estate which revested or is not property of the estate in order to resolve this motion.

Osprey relies upon two decisions of this Court, *In re Charter Co.*, 97 B.R. 636 (Bankr. M.D.Fla.1989) and *In re Charter Co.*, 97 B.R. 629 (Bankr.M.D.Fla.1989) to support its position. In the first *Charter* decision, the claimant did not receive actual notice of the deadline for surrendering debentures. Notice was provided by publication which claimant did not receive because she did not subscribe to any of the publications in which the notice was published. This Court held that because of the lack of actual notice an extension of time to surrender debentures should be granted. In the second *Charter* decision, claimants timely mailed their debentures, discussed the surrender with the escrow agent, and the agent received the documentation required for surrender prior to the deadline, however, the debentures were not received until after the deadline. On those facts the Court found it was within its power as a court of equity to grant the motion to extend deadline.

This is not a case where a creditor failed to receive notice, rather it is a case where the notice received was ambiguous. The plan does not state how the class 6 creditor election is to be made, however, the ballot form provides for an election by class 6 creditors who accept the plan. The ballot form also states that "to have your vote count, you must complete and return this form." Thus the question is whether the inclusion of the election options in the ballot form amounts to notice that the election could only be made at that time, that is, that the ballot deadline also applied to the election.

Osprey received all notices including the plan and disclosure statement which state that failure to elect stock constitutes election of the cash option. Osprey also received the ballot form which includes an election form. The Court holds that the notice provided through the disclosure statement, plan and ballot, although not totally clear, is sufficient to put Osprey on notice that the ballot deadline could apply to the election as well as the ballot. The Court holds that the notice provided to Osprey was sufficient to require Osprey to inquire about the mechanics of the election. Osprey's receipt of actual notice, albeit ambiguous, distinguishes this case

from the *Charter* decision where the claimant did not receive actual notice.

Nor is this case like the second *Charter* decision. Unlike the claimant in the second *Charter* decision who missed the surrender deadline due to circumstances beyond his control, Osprey failed to utilize the opportunities provided to inquire about the mechanics of the election. Osprey did not object to the ambiguity contained in the notice or the omission in the plan at the disclosure statement hearing, the confirmation hearing, during its negotiations with debtor, or during the appeal time after confirmation. Osprey failed to avail itself of these opportunities to clarify the application of the ballot deadline to the election.

 This is not to say that debtor is without fault. Osprey's former counsel testified that debtor knew of its intention to elect stock prior to confirmation. Osprey also informed debtor's counsel of its intention to elect stock before the stock had been issued. Debtor could have allowed Osprey to make the election at that time. However, debtor's fiduciary duty as debtor-in-possession, to act in the best interest of the estate, *In re Sharon Steel Corp.*, 86 B.R. 455 (Bankr. W.D.Pa.1988), *aff'd* 871 F.2d 1217 (3rd Cir. 1989); *In re Microwave Products of America, Inc.*, 102 B.R. 666 (Bankr.W.D.Tenn. 1989); *In re Shepherd Oil, Inc.*, 118 B.R. 741 (Bankr.D.Ariz.1990), does not extend so far as to require the debtor to protect creditors from their own inaction.

Osprey next argues that because rejecting creditors were not given the opportunity to elect stock through the ballot form, all class 6 creditors are not being treated the same and the election procedure violates 11 U.S.C. § 1123(4). And, finally, Osprey argues that the equities are in its favor and the Court, as a Court of equity, should balance the equities and require debtor to distribute stock to Osprey.

 Although Osprey received notice sufficient to require action and had opportunities to act, Osprey failed to clarify the election process. "Equity aids the vigilant, not those who slumber on their rights." 148 B.R. 832 at 836. Thus the Court does not

agree that equity favors granting Osprey's motion.

Similarly, it is simply too late for Osprey to object that it is not receiving treatment equal to that of other class 6 creditors under the plan. Osprey had notice of the opportunity to make an election through the ballot form and had the opportunity to be heard in regard to any questions it may have had concerning the mechanics of making such an election. Osprey failed to act prior to being bound by the plan pursuant to § 1141, and the Court is without the ability to remedy the result. Accordingly, Osprey's motion to elect stock is denied.

### Notice to Creditors

At the hearing on Osprey's motion, the Court raised the issue whether other similarly situated creditors would be entitled to notice if the Court were to grant Osprey's motion. Both parties argue that neither the code nor the rules require such a notice. The Court holds that this is not the type of motion which requires notice to all creditors.

### Conclusion

The Court specifically retained jurisdiction to resolve questions of interpretation and cure plan omissions. However, the Court is unable to grant effective relief and Osprey's motion is moot. On the merits of the motion, the Court holds that Osprey received sufficient notice to require it to take some action to protect is rights and denies its motion for election. The Court also holds that this is not the type of motion which requires notice to all similarly situated creditors. The Court will enter a separate order consistent with these findings of fact and conclusions.

### ORDER DENYING MOTION TO PERMIT ELECTION OF STOCK

Upon findings of fact and conclusions of law separately entered, it is

ORDERED

Motion to permit election of stock filed by Osprey International, Ltd., is denied.