**In re TJN, INC., Debtor.**

**TJN, INC., Plaintiff,**

v.

**SUPERIOR CONTAINER CORPORA-
TION; Cal Western, Inc.; California
State Bank; John T. Thompson; Jimmy
R. Phelps; Thompson Leasing Co., LLC;
and Phelps Leasing, LLC, Defendants.**

Bankruptcy No. 94–73386–W.
Adv. No. 96–8108.

United States Bankruptcy Court,
D. South Carolina.

Dec. 31, 1996.

## JUDGMENT

JOHN E. WAITES, Bankruptcy Judge.

Based upon the Findings of Fact and Conclusions of Law as recited in the attached Order of the Court, the Motion to Dismiss filed by California State Bank on November 4, 1996 and the Motion to Dismiss filed by John T. Thompson, Jimmy R. Phelps, Thompson Leasing Co. and Phelps Leasing, LLC on November 20, 1996 are denied and the Movants have ten days from the entry of this order to answer or otherwise respond to the Second Amended Complaint.

## ORDER

This matter comes before the Court as a result of a Motion to Dismiss (the "Motion") filed by California State Bank (the "Bank") on November 4, 1996 and a Motion to Dismiss filed by John T. Thompson ("Thompson"), Jimmy R. Phelps ("Phelps"), Thompson Leasing Co. ("TLC") and Phelps Leasing, LLC ("PLC") on November 20, 1996. TJN, Inc. ("TJN"), the plaintiff herein, filed a Return to the Bank's Motion on November 22, 1996, and to the Motion of Thompson, Phelps, TLC and PLC on December 5, 1996.

In support of their Motion, the Movants rely upon Rule 12(b) of the Federal Rules of Civil Procedure made applicable to adversary proceedings pursuant to Rule 7012 of the Federal Rules of Bankruptcy Procedure[1], and assert that this Court lacks both subject matter and personal jurisdiction. Because the grounds set forth in support of the Motions are very similar, they will be treated together in the following Findings of Fact and Conclusions of Law.

Barbara Barton, Columbia, SC, for plaintiff.

William Metzger, Columbia, SC, for California State Bank.

Daryl L. Williams, Columbia, SC, for John T. Thompson, Jimmy R. Phelps, Thompson Leasing Co. and Phelps Leasing, LLC.

## FINDINGS OF FACT

The transaction which forms the basis for this litigation occurred in December, 1994, and involves the sale to Superior Container Corporation ("Superior") of certain equipment (the "Equipment") and additional equipment (the "Additional Equipment")

---

1. Further references to the Federal Rules of Civil Procedure and the Federal Rules of Bankruptcy Procedure shall be by rule number only.

owned by TJN. The sale occurred pursuant to Motions for Sale pursuant to 11 U.S.C. § 363, and consisted of a sale of virtually all of the assets of the Debtor. The initial Motion for Sale was filed October 26, 1994, and requested Court approval of the sale to Superior. Objections to such sale and competitive offers were filed by NLE, Inc.

Hearings were conducted on November 28, 1994 and December 6, 1994, during which Superior appeared through its representative and requested that this Court approve its offer. After considerable competitive bidding and modifications and amendments of offers, this Court approved Superior's offer to purchase the Equipment and the Additional Equipment. The Court's approval was based upon its review of the offers, and upon the recommendation of the duly appointed Examiner in this case, Nathan Crystal. In the Examiner's opinion, the offer made by Superior, as modified, represented the greatest benefit to the debtor and the creditors herein and was based in part upon the creditworthiness of Superior.

The offer by Superior provided that Superior would purchase all the equipment sold by TJN. It divided the equipment into two different categories which for purposes of this Order will be referred to as the Equipment and the Additional Equipment. Pursuant to the Purchase Agreement entered into by the parties on December 15, 1994 (the "Purchase Agreement"), the Additional Equipment would be paid for in four separate payments as it was installed and became operational. The Equipment would be financed and secured by a lien on both the Equipment and the Additional Equipment.

Superior executed a note (the "Note") and security agreement to consummate this transaction. Cal Western, Inc. ("Cal West") executed a guaranty agreement. The Bank provided an irrevocable letter of credit to further secure the repayment. Copies of all of these documents were attached to the Purchase Agreement, which was attached as an exhibit to the Order approving the sale. The Purchase Agreement contains various representations and warranties and provides:

17. SURVIVAL OF REPRESENTATIONS AND WARRANTIES.

All representations and warranties contained in this Agreement shall survive the execution, delivery, and performance of this Agreement.

Superior's purchase of the Additional Equipment was financed by the Bank. Pursuant to the Purchase Agreement, TJN alleges it received a lien with a first priority on the Equipment and a second priority security interest in the Additional Equipment. The Bank was aware at the time of the purchase that TJN was a debtor-in-possession and that the sale of the Equipment and the Additional Equipment was being conducted under the supervision of the Bankruptcy Court.

The Order approving the sale to Superior was entered on December 15, 1994. A copy of the documents consummating the transaction were attached to the Order and were also dated December 15, 1994.

During the progress of this Chapter 11, several proposed plans of reorganization were filed, incorporating the proceeds of such sales into the distribution to the creditors. The Amended Plan, the Third Amended Plan and the Order of Confirmation all address the continuing jurisdiction of the Court and the future of the assets of the estate. The Amended Plan, filed on July 7, 1995, discusses at length the sale of the Equipment and the resulting income stream which would be used to fund the plan. As evidenced by the approved Disclosure Statement and the Amended Plan, all of the income which funds the plan is a result of the payments to be received from Superior.

Article VII of the Amended Plan refers specifically to the retention of jurisdiction post-confirmation as follows:

### JURISDICTION

7.1 *Retention of Jurisdiction. The Court shall retain jurisdiction over the reorganized debtor, his property, and all other parties appearing in the reorganization proceeding as provided by this plan or by Order of the Court.* The Court may authorize the debtor to examine, copy and produce the debtor's books, records and papers for the purposes of (i) determining all

claims that have been asserted against the debtor, or the debtor's estate; and (ii) carrying out and giving effect to any and all provisions of the plan and the Order Confirming Plan; and the Court shall retain jurisdiction as provided in the Bankruptcy Code until entry of the final decree discharging the debtor in the reorganization proceeding.

7.2 *Prosecution and Defense of Claims.* The debtor shall *retain full power after Substantial Consummation to prosecute and defend any causes of action or proceedings existing at Substantial Consummation by or against him, or resulting from the administration of the estate of the debtor or resulting from any other claim by or against the debtor or his assets, or arising prior to or existing before Substantial Consummation, including collection of outstanding accounts receivable.* The debtor may use the services of his attorney and accountants in the prosecution or defense of such claims, and shall have full power, subject to the approval of the Court, to employ, retain and replace special counsel to represent him in the prosecution or defense of any action, and to discontinue, compromise, or settle any action or proceeding, or adjust any claim. The net proceeds received from any such litigation by the debtor shall be deposited with the debtor's estate for payment of the claims of the debtor's estate. (emphasis added).

Amended Plan, pp. 21 and 22.

The Third Amended Plan, filed on January 24, 1996, also describes the status of the payments required by the Loan Documents and the anticipated ensuing litigation. It advises that the debtor would commence suit in the event that the breach is not cured and specifically provides as follows:

All proceeds derived from the original contract, litigation proceeds from any suits to compel payment or for damages under said contract, all proceeds available from settlement from the disputed contract, and all proceeds from any re-noticed sale of the equipment lines will be used to pay creditors in the same order and in the same priority as called for in the debtor's plan, as amended below.

Third Amended Plan, p. 2

This Court also retained jurisdiction in its Order of Confirmation, which was entered on January 24, 1996. Pursuant to the terms of the confirmed plan, final confirmation required dual approval by both the Bankruptcy Court and the U.S. District Court in North Carolina, which was in the process of dealing with civil forfeiture litigation involving the TJN equipment. Approval in North Carolina did not occur until July 19, 1996.

By way of Order entered on October 23, 1996, the 180 day period during which a report of substantial consummation may be filed began to run on July 19, 1996. No report of substantial consummation has been filed and no final decree has been entered. The Debtor has filed a Motion to further extend the time for filing a report of substantial consummation.

The litigation which is the basis for the instant adversary proceeding results from Superior's failure to make the payments outlined in the Note. Only three payments have been made on the Note, which have been applied to the June, July and August, 1995 payments. Superior and Cal West assert that a contingency in the Purchase Agreement has occurred which obviates the necessity of their making further payments.

This adversary proceeding was filed on March 29, 1996. It contained causes of action against Superior and Cal West and sought the entry of a declaratory judgement as to the non-occurrence of the contingency, foreclosure of the security interest in all of the equipment sold by TJN to Superior, a deficiency judgment against Superior and a judgment against Cal West as a guarantor. The Complaint was subsequently amended in order to add California State Bank as a defendant, when TJN became aware that the Bank continued to hold a lien against the equipment.

After amendment of the Complaint and service of the Bank as a new defendant, the Bank supplied TJN with information which TJN contends had not been previously disclosed. The Bank advised that in March,

1996, it foreclosed on its lien on the Additional Equipment and other equipment owned by Superior. Some of this equipment was sold to PLC, an entity owned by Jim Phelps, and allegedly formed specifically for the purpose of taking title to such equipment. The Additional Equipment was allegedly then sold to TLC, a company owned by Thompson and formed specifically for the purpose of taking title to such equipment. Phelps and Thompson are also the sole officers, directors and shareholders of Superior and Cal West. The Bill of Sale transferring title to such Additional Equipment is dated June 14, 1996 which is before the effective date of confirmation of the plan in this case. According to TJN, it was not informed of such sale and was unaware of the transfer until it received information from the Bank in August, 1996, documenting such transfer.

As a result of this additional information, TJN once again amended its complaint, to add new causes of action and new defendants. Thompson, Phelps, TLC and PLC were added as defendants. The new causes of action included an action to avoid the transfer of the Additional Equipment; a cause of action against Thompson and TLC for conversion of the Additional Equipment; a cause of action against Superior and Cal West to pierce the corporate veil; a cause of action against Thompson, Phelps, TLC and PLC for intentional interference with a contract; a cause of action against Thompson and Phelps to pierce the corporate veil of Superior and Cal West; a cause of action against the Bank for failure to conduct a commercially reasonable sale; and a cause of action against the Bank for conversion.

At this time, Superior and Cal West have answered the Second Amended Complaint. No answer has yet been filed by the Bank, Thompson, Phelps, TLC or PLC, who elected instead to file the within Motion to Dismiss pursuant to Rule 12.

## CONCLUSIONS OF LAW

### A. PERSONAL JURISDICTION

■ The Movants request that they be dismissed as Defendants on the ground that this Court lacks personal jurisdiction over them. In support of this assertion, the Movants cite *Southern Plastics Co. v. Southern Commerce Bank*, 310 S.C. 256, 423 S.E.2d 128 (1992). In *Southern*, the South Carolina Supreme Court applied a "minimum contacts" analysis in determining that the issuance of a letter of credit, in and of itself, did not constitute sufficient contacts to subject a Florida bank to personal jurisdiction in state court in South Carolina.

However, the Movants' assertion that a minimum contacts analysis is the proper analysis in determining personal jurisdiction in the bankruptcy context is misplaced. This bankruptcy involves a federal question pursuant to 28 U.S.C. § 1334. Because Rule 7004(d) provides for nationwide service of process, a "national contacts" analysis applies rather than a "minimum contacts" analysis.

■ Pursuant to 28 U.S.C. § 1334, Bankruptcy Courts have been provided with federal question jurisdiction "over all bankruptcy cases and proceedings." *In re Charter Oil Co.*, 189 B.R. 527, 529 (Bkrtcy.M.D.Fla. 1995).

> "Further, Bankruptcy Rule of Procedure 7004(d) provides for national service of process. Under Rule 7004(d), the bankruptcy courts can exercise personal jurisdiction without applying a minimum contacts analysis and remain in constitutional harmony with the Due Process Clause of the Fifth Amendment."

*Id.* (citation omitted); *see also Hogue v. Milodon Engineering. Inc.*, 736 F.2d 989 (4th Cir.1984) ("Where Congress has authorized nationwide service of process by federal courts under specific federal statutes, so long as the assertion of jurisdiction over the defendant is compatible with due process, the service of process is sufficient to establish the jurisdiction of the federal court over the person of the defendant." (citation omitted)); *4 Wright & Miller, Federal Practice and Procedure Civil 2d* § 1067.1 at 311 (stating that "all of the courts of appeals that have addressed the question have applied a national contacts standard when process is served under an applicable federal service provision."); *In re Outlet Dept. Stores, Inc.*, 82 B.R. 694, 699 (Bkrtcy.S.D.N.Y.1988) ("[I]n federal question cases, where national service

of process is permitted, the 'minimum contacts' test set forth in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), does not apply."); *Matter of Self,* 51 B.R. 683 (Bkrtcy.N.D.Miss.1985) ("As several courts have held, the minimum contacts theory should not apply in bankruptcy cases since the jurisdictional foundation in such cases is based on a statutory rule designed to allow the totality of in personam and in rem jurisdiction to be exercised by the bankruptcy court where the case is pending.").

In *Charter Oil Co.,* a case with jurisdictional facts similar to the present case, the plaintiff filed a complaint in Florida bankruptcy court against defendants, residents of Texas. The defendants moved to dismiss for want of personal jurisdiction, arguing that they had not been physically present in Florida in over ten years and that they had no contacts with the state of Florida. The court, in determining that it did have personal jurisdiction over the defendants, distinguished between the minimum contacts doctrine and the national contacts doctrine.

> The minimum contacts doctrine provides that a defendant must have sufficient contacts with the forum state or have some "presence" in the forum state, to comport with Due Process, and the notions of fair play and substantial justice. (citation omitted) ... The national contacts doctrine provides that in federal question cases, the court has personal jurisdiction over defendants when there is a statutory provision for nationwide service of process and defendants have sufficient contacts with United States, not the state in which the federal court sits. (citation omitted).

*Id.* at 528–29. The court stated that it was unpersuaded by the defendants' reliance on a "minimum contacts" analysis, and adopted the "national contacts" analysis "as the appropriate standard for determining whether to exercise personal jurisdiction over defendants." *Id.* at 530. The court then reasoned that it could exercise personal jurisdiction over the defendants because the defendants resided within the United States and thus had contacts with the United States. *Id.*

The minimum contacts analysis relied upon by the Movants is inapplicable to this proceeding. Because Rule 7004(d) provides for nationwide service of process and because this case involves a federal question, the national contacts analysis is applicable. It is undisputed that the Movants have contacts with the United States, and it is therefore evident that this Court has personal jurisdiction over the Movants.

## B. SUBJECT MATTER JURISDICTION

▮ In their Motions, the Movants state that TJN's Chapter 11 plan does not retain jurisdiction over the Bank. This Court has already addressed this issue in the July 19, 1995 Order resolving the Motions to Dismiss by Superior and Cal West.

> The Defendants have requested dismissal pursuant to FRCivP 12(b)(1), which means that the court must determine that no subject matter jurisdiction exists in order to grant the Motion. In reaching its decision, the court must assume that the allegations in TJN's complaint are true and must assume that all reasonable inferences to be made from such allegations are also true. *Great Lakes Educational Consultants v. Federal Emergency Management Agency,* 582 F.Supp. 193 (W.D.Mich.1984); *MacKenzie v. Local 624, International Union of Operating Engineers,* 472 F.Supp. 1025 (N.D.Miss.1979); *Barton v. City of Eustis,* 415 F.Supp. 1355 (M.D.Fla. 1976).
>
> It appears to the Court that the Amended Plan, the Third Amended Plan and the Order of Confirmation contain language specifically retaining jurisdiction and that such language is sufficient to preserve the court's jurisdiction with regard to this litigation. It further appears to this court that this proceeding is a core proceeding, in that it is integral to the administration and liquidation of assets of this case and the ability of this debtor to perform the plan.

*In re TJN, Inc.,* 94–73386–W, C 96–8108–W, slip op. at 7–8 (Bkrtcy.D.S.C.7/19/95).

While this issue has previously been addressed by this Court, because the Movants were not a party during this earlier determi-

nation, they are not bound by the doctrine of *collateral estoppel. United States v. Nash,* 447 F.2d 1382 (4th Cir.1971). However, it does not appear that the Movants have raised an issue or argument in their Motions which has not already been raised in this adversary proceeding.

The clear, unambiguous language in the Amended Plan provides for retention by this Court of jurisdiction, especially with regard to the property of the reorganized debtor, which includes its right to receive payments and any lien rights or other interests it may have in the Equipment and Additional Equipment. It further provides that this Court shall retain jurisdiction to carry out the provisions of the plan and the Order confirming the plan. It also specifically provides for the retention of the ability to prosecute causes of action by the debtor, including ones resulting from the implementation of the plan and collection of accounts receivable.

The Third Amended Plan further provides for the dedication of litigation proceeds to the funding of the plan, and specifically contemplates this litigation.

Movants rely on 11 U.S.C. § 1141 as the means of terminating this Court's jurisdiction over property of the estate. However, that statute clearly provides a broad exception and defers to the language in the plan and the order confirming the plan, which, as shown hereinabove, retains such jurisdiction.

■ Even in cases in which the reservation of jurisdiction is much less specific, Bankruptcy Courts have determined that a reservation of jurisdiction in the plan is sufficient to retain jurisdiction. *In re American Body Armor & Equipment, Inc.,* 172 B.R. 659 (Bkrtcy.M.D.Fla.1994). There is no question that the jurisdiction of the bankruptcy court extends post-confirmation to "protect its [confirmation] decree, to prevent interference with the execution of the plan and to aid otherwise in its operation." *In re Pioneer Inv. Services Co.,* 141 B.R. 635, 640 (Bkrtcy.E.D.Tenn.1992).

■ Moreover, even absent such specific retention of jurisdiction, this Court would still retain jurisdiction, as necessary to administer the estate pursuant to 11 U.S.C.

§ 1142 and Rule 3020(d), which states that "[n]otwithstanding the entry of the order of confirmation, the court may issue any other order necessary to administer the estate." Rule 3020(d) of the Federal Rules of Bankruptcy Procedure.

■ The Movants also assert that this adversary proceeding does not constitute a core proceeding. However, the relevant code provisions and case law indicate to the contrary. "Core proceedings under 28 U.S.C. § 157(b) are those matters which *arise under title 11 or arise in a case under title 11* where the bankruptcy judge may enter final orders or judgments." *Matter of O'Sullivan's Fuel Oil Co., Inc.,* 88 B.R. 17, 19 (D.Conn.1988). Several Circuits have held that core proceedings be given an expansively broad interpretation. *See In re Johnson,* 960 F.2d 396, 401 (4th Cir.1992) ("Many courts construe the term 'core proceedings' quite broadly. Indeed, the ambiguity in § 157(b)(2) invites such interpretation with such broadly inclusive language that encompasses proceedings 'affecting the liquidation of assets of the estate' and matters 'concerning the administration of the estate.'" 28 U.S.C. § 157(b)(2)(A),(O).); *In re Arnold Print Works, Inc.,* 815 F.2d 165, 168 (1st Cir.1987) (stating that legislative history "indicates that Congress intended that 'core proceedings' would be interpreted broadly, close to or congruent with constitutional limits. The sponsors [of § 157] repeatedly said that 95 percent of the proceedings brought before bankruptcy judges would be core proceedings.") (citing 130 Cong. Rec. E1108–E1110 (daily ed. March 20, 1984) (statement of Representative Kastenmeier); *Id.* at EH1848, H1850 (daily ed. March 21, 1984) (statement of Representative Kindness)); *In re Mankin,* 823 F.2d 1296, 1301 (9th Cir.1987) ("Nothing in the legislative history of § 157(b) suggests that Congress enumerated examples of core proceedings in § 157(b) with anything but a view toward expanding the bankruptcy court's jurisdiction to its constitutional limit.").

Applying this broad interpretation of § 157(b), it becomes apparent that this proceeding constitutes a core proceeding. The Bank financed Superior's acquisition of the Additional Equipment. This transaction oc-

curred while TJN was a debtor-in-possession and under the supervision of the Bankruptcy Court. The other Movants are alleged to have interfered and participated in an improper transfer or taking of the Debtor's property interest prior to the effective date of the confirmation of the plan in this case. "The great majority of courts that have considered the issue have ruled that post-petition proceedings, where no cause of action existed on the date of filing of the petition, are core proceedings because they arose 'in a case.'" *In re Baltimore Motor Coach Co.*, 103 B.R. 103, 106 n. 2 (D.Md.1989) (quoting *Matter of O'Sullivan's Fuel Oil Co., Inc.*, 88 B.R. 17, 20 (D.Conn.1988)).[2]

In addition to the case law reviewed hereinabove, 28 U.S.C. § 157(b)(2) contains a non-exclusive list of proceedings which would include core proceedings. The instant litigation arguably could come within a number of these categories including: a matter concerning the administration of the estate (28 U.S.C. § 157(b)(2)(A)); a matter involving orders to turn over property (28 U.S.C. § 157(b)(2)(E)); a matter involving a proceeding to determine, avoid or recover a fraudulent conveyance (28 U.S.C. § 157(b)(2)(H)); a matter involving a determination as to the validity, extent or priority of liens (28 U.S.C. § 157(b)(2)(K)); or other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims (28 U.S.C. § 157(b)(2)(0)). Any of these categorizations would also be sufficient to determine that the litigation is a core proceeding and that subject matter jurisdiction exists.

■ In support of its assertion that this litigation is not a core proceeding, the Bank states that "the claims against [the Bank] have nothing to do with the Bankruptcy Code but are merely statutory or common law claims with no relationship to the Bankruptcy Code." However, this conclusion, even if correct, is not determinative of this issue.

"A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. § 157(b)(3); *see also In re Poplar Run Five Ltd. Partnership*, 192 B.R. 848, 857 (Bkrtcy.E.D.Va.1995) ("A proceeding that involves state-law questions may still fall within the 'core' jurisdiction of this Court if it 'arises in' a case under title 11."). Because this litigation arose in a chapter 11 case and is related to the implementation of the plan of reorganization, it is a core proceeding even though it may be affected by state law.

In considering the issue of whether this type post-confirmation litigation is a core proceeding, arising in a Chapter 11, the court in *In re Poplar Run Five Ltd. Partnership* discussed and considered several factors but ultimately concluded, in large part because a final decree had been entered, that it did not have subject matter jurisdiction over the adversary proceeding. However, a review of these same factors leads this Court to a different conclusion in the within adversary proceeding. Initially, it must be noted that this litigation involves the post-petition sale of essentially all of the assets of the bankruptcy estate and that distribution pursuant to the confirmed plan is dependent upon the proceeds from such sale or such litigation. The contract in question was approved at the request of or with the participation of these Defendants. The possibility of this litigation was expressly recognized as an asset of the debtor in the Amended Plan and the Order Confirming Plan which specifically included language that retained jurisdiction to pursue such litigation should that be necessary to implement the plan. Finally, the alleged transfer, interference or taking of the Debtor's property interest occurred preconfirmation. No substantial consummation has occurred in this case and unlike the *In re Poplar Run Five Ltd. Partnership* case, no final decree has been entered.

In reviewing these factors, the Court reaches the conclusion that the litigation before it is a core proceeding because it arises

---

**2.** In determining when litigation "arises in" a chapter 11 case, it has been said that "[a] proceeding 'arises in' a Chapter 11 case when it is 'not based on any right expressly created by Title

11 but would have no practical existence but for the bankruptcy.'" *In re A.H. Robins Co., Inc.*, 182 B.R. 128, 132 (Bkrtcy.E.D.Va.1995) (citations omitted).

**510**

in a Chapter 11. As the court noted in *In re Poplar Run Five Ltd. Partnership* "... there may be sufficient grounds for viewing the collection of a post-petition receivable as an 'arising in' proceeding, so long as the bankruptcy case remains open to administer the asset or to implement the plan." *In re Poplar Run Five Ltd. Partnership,* 192 B.R. 848 (Bkrtcy.E.D.Va.1995).

 Not only does this Court have jurisdiction because this litigation arises in a Chapter 11, it also has jurisdiction because the litigation is related to a Chapter 11. The Court disagrees with the Movants' statement, "[n]either does the bankruptcy court have jurisdiction of this matter as a proceeding 'related to' a bankruptcy case." In making this assertion, the Movants rely upon the test established by the Fourth Circuit Court of Appeals in *A.H. Robins Co., Inc. v. Piccinin* in which the Fourth Circuit defines the "related to" jurisdiction provided by 28 U.S.C. § 1334 and adopts the definition provided in *Pacor, Inc. v. Higgins,* 743 F.2d 984, 994 (3rd Cir.1984):

> An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, option or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankruptcy estate.

*A.H. Robins Co., Inc. v. Piccinin,* 788 F.2d 994, 1002 (4th Cir.1986).

Using this definition, it appears that this bankruptcy case is still being administered and the payments pursuant to the confirmed plan and the debtor's rights in property are completely dependent upon the recovery, if any, from this litigation. Therefore, the definition provided by *A.H. Robins Co., Inc. v. Piccinin* would support the jurisdictional authority of this Court pursuant to 28 U.S.C. § 157(a).

### CONCLUSION

This Court has personal and subjection matter jurisdiction over this matter as a result of specific retention of jurisdiction in the Amended Plan, the Third Amended Plan, and the Order of Confirmation. Additionally, this Court retains jurisdiction because this matter constitutes a core proceeding. As this Court has already noted in its July 19, 1996 Order "... this proceeding is a core proceeding, in that it is integral to the administration and liquidation of assets of this case and the ability of this debtor to perform the plan." The case has not been closed and no order or final decree has been entered. This case is still being administered and the results of the litigation are critical to the complete administration of the bankruptcy case. This Court has subject matter jurisdiction over this litigation because such jurisdiction was retained in the plans and the order of confirmation; because the litigation involves a post-petition cause of action arising under and related to a contract approved by this court; because the administration of this bankruptcy and implementation of the plan is still continuing and because this litigation is a core proceeding pursuant to 28 U.S.C. § 157(b). Additionally, this court has personal jurisdiction over the Movants as a result of the existence of a federal question and the Movants' undisputed contacts with the United States. For all of these reasons, it is therefore

**ORDERED,** that the Motion to Dismiss filed by California State Bank on November 4, 1996 and the Motion to Dismiss filed by John T. Thompson, Jimmy R. Phelps, Thompson Leasing Co. and Phelps Leasing, LLC on November 20, 1996 are denied and the Movants have ten days from the entry of this order to answer or otherwise respond to the Second Amended Complaint.

**AND IT IS SO ORDERED.**