809 F.2d 228
 16 Collier Bankr.Cas.2d 277, 15 Bankr.Ct.Dec. 545,
Bankr. L. Rep. P 71,583
 Morris E. GOODMAN, Appellant,
v.
PHILLIP R. CURTIS ENTERPRISES, INC., Phillip R. Curtis;
Page Scott; Delmarva Power and Light Company, Defendants,
and
Jeremiah A. Denton, III, Appellee. (Two Cases)
In re Morris E. GOODMAN, Debtor in Possession.
 No. 85-1783.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 7, 1986.
Decided Jan. 8, 1987.
 
 Paul A. Lipkin (Goldblatt, Lipkin, Cohen, Anderson, Jenkins & Legum, P.C., Norfolk, Va., Melvin Friedman, Virginia Beach, Va., Allan Cahill, Norfolk, Va., Melvin Friedman, P.C., Virginia Beach, Va., on brief), for appellant.
 Jeremiah A. Denton, III (Dawn G. Phillips, Denton & Ferrebee, Virginia Beach, Va., on brief), for appellee.
 Before RUSSELL, HALL and PHILLIPS, Circuit Judges.
 JAMES DICKSON PHILLIPS, Circuit Judge:
 
 
 1
 Morris E. Goodman, a Chapter 11 debtor, appeals from two orders of the district court, growing out of a controversy between Goodman and Jeremiah A. Denton, III, Esquire, concerning the proper disposition of a settlement offer received by the latter in connection with certain tort litigation he had initiated and pursued for Goodman with the bankruptcy court's approval. Assuming that the settlement proceeds would be available for distribution under Goodman's confirmed Chapter 11 Plan, the bankruptcy court, on Denton's application, but over Goodman's objection, ordered Goodman to settle the personal injury claim. Following a complex series of proceedings in which Goodman challenged and Denton sought to enforce the order of the bankruptcy court, the district court affirmed the order and directed Goodman to accept the settlement and to execute a release of the tort litigation.
 
 
 2
 Because the tort claim was not included as a contingent asset within Goodman's confirmed Chapter 11 Plan, however, and because the Plan was not properly modified to embrace the claim, we hold that the district court lacked authority to compel its settlement. We therefore vacate its order having that effect. But because of equitable considerations we remand for proceedings, on proper motion, to determine whether the confirmed Plan can and should now be modified pursuant to 11 U.S.C. Sec. 1127(b) to include as an asset the tort claim, and for such further proceedings as may be warranted.
 
 
 3
 * Goodman's creditors filed a Chapter 7 bankruptcy petition against him on December 22, 1981. The Chapter 7 case was converted into a proceeding under Chapter 11 on June 5, 1982, with Goodman as debtor-in-possession.
 
 
 4
 Goodman had been seriously injured in an airplane accident in May 1981 and had approached several attorneys specializing in aviation torts and others, including his bankruptcy counsel, to represent him in an action against the aircraft's manufacturers. Apparently believing Goodman's claim to be without merit, these attorneys all declined to represent him. Shortly before the applicable statute of limitations was to expire, however, Goodman prevailed upon Denton to pursue his personal injury claim and sought, without objection, the bankruptcy court's permission to retain Denton for that purpose. Relying largely upon Goodman's assurances that the litigation would produce a benefit for the estate, the bankruptcy court granted Goodman's petition, after a hearing, on March 9, 1983, "subject to the authority of the Court." The court's order required advance approval of expenditures in connection with the prosecution of the claim and provided that Denton would be compensated by way of a "one-third ( 1/3) contingency of any amounts recovered, whether by settlement or judgment." Joint Appendix (J.A.) 32-33.
 
 
 5
 Goodman's Chapter 11 Plan was confirmed more than a year later, on March 28, 1984. The Plan as confirmed contemplated full satisfaction of all creditors' claims within three years. The claims were to be paid from the proceeds of loans against, and death benefits from, various insurance policies and the sale of certain real estate owned by Goodman. Goodman's tort claim was not mentioned or formally included in the Plan. Although this contingent asset was not listed in Goodman's disclosure statement nor in his schedule of assets filed prior to confirmation,[1] its existence was known to Goodman's creditors by virtue of the duly noticed proceedings concerning Denton's appointment to prosecute the claim. Testimony in the record suggests that the then-contingent asset was not included in the Plan because of the creditors' perceptions, derived mainly from representations by Goodman's counsel, that the claim was probably without merit, that it would never materialize and that, in any event, their claims ultimately would be paid in full from funds generated by the insurance policies and real estate subject to the Plan.[2]
 
 
 6
 After the Plan was confirmed, Denton received an offer to settle the litigation for $60,000 and applied to the bankruptcy court, over Goodman's objection, for approval of the settlement. Goodman argued that the tort claim was worth considerably more than $60,000 and that his creditors would be paid in full, under the Plan, without resort to the litigation proceeds.
 
 
 7
 The bankruptcy court ordered Goodman to accept the settlement offer, or, alternatively, to post a $60,000 supersedeas bond, and denied Goodman's motion to stay enforcement of the order without bond pending appeal to the district court. The bankruptcy court's conditional approval of the settlement was to take effect on April 15, 1985, unless the $60,000 bond was posted. Goodman did not post the bond and Denton thereafter moved the district court to compel execution of the settlement approved by the bankruptcy court "under pain of contempt." Goodman responded with a motion in the district court to stay the order of the bankruptcy court without bond pending appeal.
 
 
 8
 All of this procedural maneuvering culminated in a hearing, on June 19, 1985, on Goodman's motion for a stay without bond pending appeal, which the district court converted into a hearing on the merits. In an order dated July 16, 1985, the district court assumed that the bankruptcy court had authority to compel the settlement but, based upon "equitable considerations," ordered that Goodman might avoid the settlement and the bond requirement by paying Denton costs and attorney's fees, on a quantum meruit basis, to be determined by the bankruptcy court. The district court noted that the Plan could be modified to incorporate the tort claim but saw "little practical reason" for modification as the original Plan called for 100% payment of Goodman's debts and "[t]he only economic loss flowing to the creditor[s] is the loss of interest on the indebtedness for the additional pay back time." J.A. 161. In addition, the court observed that more than 70% of the secured debt had already been repaid.[3] The order further directed that failure to pay the fees within ten days of their determination by the bankruptcy court would result in affirmance of the bankruptcy court's order compelling execution of the settlement agreement.
 
 
 9
 On remand, the bankruptcy court set Denton's fee at $28,000. In an order dated August 5, 1985, the district court reduced the fee to $20,000, held that the fee was an administrative expense pursuant to 11 U.S.C. Sec. 503(b)(4),[4] and reduced the bond required to stay the bankruptcy court's order to execute the settlement pending appeal to this court from $60,000 to $25,000, an amount roughly equal to Denton's fee plus expenses. Thus, in order to avoid enforcement of the bankruptcy court's order, Goodman was required to pay Denton's fee or to post the reduced supersedeas bond within ten days. He did neither and now appeals both of the orders of the district court, contending that the district court lacked jurisdiction to enter them.[5]II
 
 
 10
 The gist of Goodman's argument is that once a Chapter 11 plan has been confirmed, the bankruptcy court has no jurisdiction to enter any orders respecting property not included in the plan. Here, he says, the court was therefore without jurisdiction to enter orders compelling him, as a Chapter 11 debtor, to settle a personal injury action commenced with the bankruptcy court's approval before confirmation of a plan where the claim, a contingent asset of the estate at commencement of the bankruptcy case,[6] was not included within the confirmed plan.
 
 
 11
 The bankruptcy court's authority following confirmation of a plan is defined in 11 U.S.C. Sec. 1142.
 
 
 12
 Implementation of plan.
 
 
 13
 (a) Notwithstanding any otherwise applicable nonbankruptcy law, rule, or regulation relating to financial condition, the debtor and any entity organized or to be organized for the purpose of carrying out the plan shall carry out the plan and shall comply with any orders of the court.
 
 
 14
 (b) The court may direct the debtor and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property dealt with by a confirmed plan, and to perform any other act, including the satisfaction of any lien, that is necessary for the consummation of the plan.
 
 
 15
 This grant of post-confirmation authority thus undoubtedly limits the authority of the court to matters concerning the implementation or execution of a confirmed plan. See 5 Collier on Bankruptcy p 1142.01 at 1142-4 (15th ed. 1986). Reflecting this, Goodman's Plan accordingly recites that the "Court shall retain jurisdiction after confirmation until final payment, to insure that the Debtor complies with the provisions of the Plan of Reorganization and with all orders of the Court relative or pursuant thereto, and to enable him to take all action contemplated by the Plan." J.A. 41.
 
 
 16
 Because assets which are not drawn into the Plan vest in the debtor upon confirmation, 11 U.S.C. Sec. 1141(b),[7] matters concerning the disposition of such non-plan assets would not affect the implementation or execution of the Plan. Thus, the argument runs, the bankruptcy court's jurisdiction with respect to the disposition of the offer to settle Goodman's personal injury action, which was not included as a source of funding under the Plan, terminated upon confirmation so that the orders here challenged are void and should be vacated.
 
 
 17
 We need not decide whether the statutory limitation on the bankruptcy court's post-confirmation authority is truly "jurisdictional" in the sense apparently urged by Goodman. Whatever the technical effect of confirmation on the court's authority under the new Code, it obviously does not divest the bankruptcy court of all jurisdiction in the case. See generally 5 Collier on Bankruptcy p 1142.01. Most critically for our purposes, jurisdiction is specifically retained to modify a previously confirmed plan. 11 U.S.C. Sec. 1127; see also 11 U.S.C. Sec. 350 (power to reopen "closed" case).
 
 
 18
 Because modification of a plan can extend to the realization of post-confirmation appreciations in the value of plan assets, see, e.g., Chase v. Austrian, 189 F.2d 555, 557 (4th Cir.1951) (under old Act); Knight v. Wertheim & Co., 158 F.2d 838, 843 (2d Cir.1946) (same), it may obviously extend as well in an appropriate case to the inclusion of Sec. 541 estate property not included at all in an originally confirmed plan.
 
 
 19
 In effect, the bankruptcy and district court's various post-confirmation orders respecting Goodman's personal injury claim involved attempted modifications of the confirmed plan to draw in that item of estate property. We therefore believe that the proper way to analyze the authority of the courts to enter those orders is to consider their procedural regularity as orders effecting a Sec. 1127 modification, rather than as possible excesses of any retained post-confirmation jurisdiction.
 
 
 20
 Even when analyzed in procedural regularity rather than "jurisdictional" terms we are satisfied that the procedural irregularities here were so egregious that the challenged orders must be held invalid. 11 U.S.C. Sec. 1127(b) gives the procedure for modification of confirmed plans
 
 
 21
 [t]he proponent of a plan or the reorganized debtor may modify such plan at any time after confirmation of such plan and before substantial consummation of such plan, but may not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title. Such plan as modified under this subsection becomes the plan only if circumstances warrant such modification and the court, after notice and a hearing, confirms such plan as modified, under section 1129 of this title. (Emphasis added.)
 
 
 22
 "Substantial consummation" is defined in Sec. 1101(2) to mean:
 
 
 23
 (A) transfer of all or substantially all of the property proposed by the plan to be transferred;
 
 
 24
 (B) assumption by the debtor or by the successor to the debtor under the plan of the business or of the management of all or substantially all of the property dealt with by the plan; and
 
 
 25
 (C) commencement of distribution under the plan.
 
 
 26
 Assessing the challenged orders for procedural regularity under the requirements of Sec. 1127(b), they were obviously entered without the notice, hearing and formal confirmation required. Because of the obvious importance of those procedural requirements, the orders must be held at least voidable for procedural irregularity on this direct attack. See Restatement (Second) Judgments Sec. 11, comment e (lack of subject matter jurisdiction and procedural irregularities compared for effects). Goodman is therefore entitled to have those orders vacated, and we will so order.
 
 III
 
 27
 The problem then arises, however, of the proper disposition of these appeals. If the challenged orders are now simply vacated by this court as the terminal disposition of the challenge, a difficult set of problems is created. In response to and reliance upon the challenged orders of the bankruptcy and district courts, the state courts, relying upon their facial regularity, have entered final orders dismissing Goodman's state tort claim.[8] Payments under the irregularly ordered settlement of that claim have been made by the state tort defendants who hold federal court ordered releases from Goodman. Denton has received irregularly-approved attorney fees out of the ordered settlement, and distribution of the remainder to creditors has been irregularly ordered.
 
 
 28
 If we simply declare the challenged orders invalid with no possibility of validation, efforts will undoubtedly and properly be made to untrack a great deal of what has flowed from the irregularity. Such untracking will affect not only parties to this bankruptcy proceeding but outsiders--most notably the state tort defendants and the state courts whose judgments may thereby be drawn in question.
 
 
 29
 While that may yet be the unavoidable ultimate consequence of the irregularity, we believe that an alternative possibility deserves attention in this equitable proceeding before that final draconian step is taken. Because plan modification, if regularly sought, might have been properly allowed, and because the irregularity is most properly laid to the bankruptcy and district courts acting sua sponte rather than to any of the adversary parties, we think a remand to consider the possibility of a regular modification under current circumstances is the appropriate immediate remedy.
 
 
 30
 In remanding to explore this possibility we express no opinion whether if modification is regularly sought it should be allowed. Nor may we properly dictate the actions of the various parties in interest in respect of the opportunity provided. In the first place, the decision whether modification should now be sought must itself be left to the proper parties. Under Sec. 1127(b), post-confirmation modification can only be initiated by the proponent of a plan or a reorganized debtor. The first step toward irregularity here in fact lay in the failure of a proper party formally to seek modification. But the reason for this failure is a prime reason for our belief that remand for a renewed opportunity is appropriate. When the proponent of Goodman's original Plan, a Class I creditor, declared early in the proceedings that it would seek to modify the Plan if the tort claim settlement was approved, the bankruptcy court effectively deflected the effort, stating that "we're not here on that today." J.A. 88. Given the subsequent rulings of the district court, purporting first to consider and then, in effect, to modify, Goodman's Plan sua sponte, the creditors cannot be faulted for failing to initiate formal modification proceedings pursuant to Sec. 1127(b). Upon the remand an opportunity must first be provided for a proper party to seek modification, and the bankruptcy court should do this by notice allowing a reasonable time for that purpose.
 
 
 31
 If modification is properly sought, the court should then consider it under the provisions of Sec. 1127(b), assessing its propriety in light of the relevant conditions as they then obtain, including the degree of consummation of the plan. If the court decides that modification to include as an asset Goodman's personal injury claim is warranted, the court may consider confirming by nunc pro tunc order its previous orders ordering settlement and release of the tort claim and its associated orders for disposition of the settlement proceeds or may consider making such new orders in the premises as it considers warranted by equitable considerations. Any such orders will of course be subject to review as in the normal course.
 
 
 32
 If modification is not sought within the time allowed or is found not warranted under Sec. 1127(b), the bankruptcy court and district court must then enter orders vacating as invalid all of their previous orders respecting Goodman's personal injury claim and the disposition of proceeds from its settlement.[9]
 
 
 33
 We therefore vacate the orders appealed from and remand to the district court for remand to the bankruptcy court for further proceedings consistent with this opinion.[10]
 
 
 34
 SO ORDERED.
 
 K.K. HALL, Circuit Judge, concurring:
 
 35
 Although I would have preferred a more definitive disposition of this unfortunately convoluted case, I believe that the majority resolves the matter in an acceptable fashion. I, therefore, concur in the result reached in the majority opinion despite some personal misgivings with regard to the efficacy of the remand that it decrees. I find in this case, however, certain elements that are so troubling that I am compelled to address them in a separate opinion.
 
 
 36
 As an initial matter, I strongly doubt whether it will be possible on remand to modify Goodman's reorganization plan in order to bring the tort claim within the scope of the bankruptcy court's authority. As the majority recognizes, the statutory authorization contained in 11 U.S.C. Sec. 1127(b) may only be invoked by proper parties, for cause, and prior to "substantial consummation" of the existing plan. The original reorganization plan in this case envisioned that all creditors would receive total compensation without regard to any funds potentially recoverable from the tort claim. Furthermore, at the time that the instant litigation commenced, it appeared that a significant amount of claims had already been satisfied. Even assuming that on remand a proponent of the initial plan properly seeks modification, I believe that the burden of establishing both a justifiable cause for modification and an absence of "substantial consummation" will be heavy indeed.
 
 
 37
 I recognize that if the district court's orders at issue are simply reversed, the procedural implications will be substantial. Subsequent collateral proceedings have undoubtedly created complications of Gordian proportions. Nevertheless, if a pure reversal without the possibility of modification is determined on remand to be the proper course, no court should shrink from it. Much of the confusion that is now part of this case flows from actions undertaken by various parties in reliance upon the district court's orders when those very orders were on appeal to this Court. Neither we nor any other court must refrain from a proper application of the law simply because the consequences of that action have been amplified by precipitous actions undertaken by parties to the dispute.
 
 
 38
 Finally, I wish to express my continuing dismay regarding the actions that lay at the core of this appeal. Simply stated, the district court allowed an attorney who had entered into a contingent fee relationship with his client to receive compensation even though the contingency was never satisfied. It has been soundly stated that "[a] contingency fee arrangement has an element of risk for any attorney ... [and] imposes on the attorney the duty to carry his client's claim through litigation, if necessary...." Hardison v. Weinshel, 450 F.Supp. 721, 723 (E.D.Wisc.1978).
 
 
 39
 A recalcitrant client who spurns a painfully negotiated settlement and insists on litigation on a claim of uncertain value doubtlessly frustrates the attorney whose skills have produced the offer. Nevertheless, that is the very risk which is assumed when the attorney agrees to a contingent fee arrangement. Although the special circumstances of bankruptcy law may in limited situations allow an attorney to be relieved of some of the burdens imposed by the arrangement, such judicial actions must by necessity be strictly scrutinized.
 
 
 40
 We have recognized that the contingent fee is supported by sound policy favoring "a method for those less financially advantaged to vindicate their substantive rights." Liberty Mutual Insurance Company v. Ameta & Company, 564 F.2d 1097 (4th Cir.1977). That policy will be ill-served if judicial intrusion overrides the intent of the client without some other substantial justification. On the record of this case, I can find no adequate justification for relieving Denton of the consequences of his agreement. I trust that on remand both the district court and the bankruptcy court will weigh this factor as part of their continuing deliberations.
 
 
 
 [1]
 According to Goodman's bankruptcy counsel, the tort claim was omitted from the disclosure statement because, at the time the statement was prepared, counsel "was under the impression that the conclusion had been reached that there was no cause of action there that could be pursued...." Transcript of March 8, 1983 hearing regarding disclosure statement filed by Virginia Beach Bank of Commerce, at 21
 
 
 [2]
 When asked by the bankruptcy court whether the tort action should be pursued, counsel for the Creditor's Committee responded that "it's going to involve a lot of discovery all around the country, a products liability case, a lot of expense, and we would have serious reservations about that ... but the insurance is there. The land is there." Transcript of March 8, 1983, hearing regarding disclosure statement filed by Virginia Beach Bank of Commerce, at 27-28. At the post-confirmation hearing on Goodman's objection to Denton's application to compromise the claim, the bankruptcy court observed that
 we heard here for a great period of time the story that we had a cause of action that could not be realized upon. I wonder what the creditor's reaction [would have] been if they now [sic] knew what is being represented before the Court today. You see, all of this was not set forth in the disclosure statement. All of a sudden that which was worthless is now being represented today as being worth ... up to $60,000, and may be worth even more, so we have to start with the premise that the creditors have not been fully apprised, based upon this latest development.
 J.A. 81. In its order of July 16, 1985, however, the district court noted that, although it did not condone Goodman's failure to include the tort claim in his assets or contingent claim schedules, "its inclusion probably would have had a negligible effect on the structure of the confirmed plan due to the claim's contingent nature." J.A. at 161.
 
 
 [3]
 Although the district court stated that "70% of the total claims have already been paid," J.A. at 161 (emphasis added), Goodman represented only that 70% of the Class I (secured) creditors' claims had been paid as of the April 2, 1985, hearing on Goodman's objection to Denton's application to compromise the tort claim. J.A. 70. The Plan provides that the Class II (unsecured) creditors "shall not receive any distribution until the claims of creditors in Class I shall have been paid in full...." J.A. at 40. We therefore must consider it an open question on the record we review whether the Plan was then or may now be "substantially consummated."
 
 
 [4]
 The district court's determination that Denton's fee was allowable as an administrative expense pursuant to 11 U.S.C. Sec. 503(b)(4) was in error. Section 503(b)(4) accords administrative expense status to "reasonable compensation for professional services rendered by an attorney or an accountant of an entity whose expense is allowable under paragraph (3) of this subsection...." (Emphasis added.) Section 503(b)(3) refers to costs incurred by professionals retained by creditors, Sec. 503(b)(3)(A) through (D), or custodians, Sec. 503(b)(3)(E), whereas Denton was retained by the debtor. The fee may qualify as an administrative expense, if at all, under Sec. 503(b)(1)(A), which covers "the actual, necessary costs and expenses of preserving the estate...."
 
 
 [5]
 After these appeals were filed, Goodman and his counsel were directed to show cause why an order should not be entered requiring, among other things, the immediate execution of all documents necessary to compromise the personal injury action. Meanwhile, on Denton's motion, the state personal injury action was dismissed with prejudice by the state court on November 27, 1985, and the tort defendants delivered to Denton a check for $60,000 in settlement of the claim. Denton retained an amount equal to his court-appointed fee plus expenses and paid the balance to the bankruptcy court for the benefit of Goodman
 At the show cause hearing, on January 2, 1986, Goodman was ordered to execute a special release of his tort claim, which he did "under protest." In an order dated January 8, 1986, the district court further directed that the check made out to the bankruptcy court for Goodman be returned to Denton, that Denton pay the balance of the settlement proceeds to the Clerk of the bankruptcy court, and that the Clerk determine the balance owed each creditor under the Plan and disburse to each creditor a pro rata share of the proceeds with any remainder payable to Goodman. This order is the subject of a separate appeal now pending before this court. No. 86-3952, In re: Morris E. Goodman, Melvin Friedman, Paul M. Lipkin, Allen Cahill.
 
 
 [6]
 Property of the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. Sec. 541(a)(1). Specifically included are causes of action which the debtor could assert at the commencement of the case. 5 Collier on Bankruptcy, p 1141.01, p. 1141-8
 
 
 [7]
 Section 1141(b) provides that "Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor."
 
 
 [8]
 We are advised that Goodman's petition to review the state court dismissal of his tort claim was denied by the Supreme Court of Virginia on June 9, 1986
 
 
 [9]
 In that unpleasant event, the parties will simply be left to their own devices in pursuing their interests as they may be affected by the invalidation of the orders respecting Goodman's personal injury claim and the proceeds of the claim's settlement
 
 
 [10]
 Even were the procedural defects we find here considered "jurisdictional," the remand we order would yet be proper. Even "jurisdictional" defects may be corrected in the course of proceedings with the effect of validating orders entered while the defects deprived of jurisdiction. See Finn v. American Fire & Casualty Co., 207 F.2d 113, 115 (5th Cir.1953); Levering & Garrigues Co. v. Morrin, 61 F.2d 115 (2d Cir.1932)