## In re POPLAR RUN FIVE LIMITED PARTNERSHIP, Debtor.

## POPLAR RUN FIVE LIMITED PARTNERSHIP, Plaintiff,

v.

## VIRGINIA ELECTRIC & POWER CO., Defendant.

## VIRGINIA ELECTRIC & POWER CO., Third–Party Plaintiff,

v.

## SOUTH CHARLES REALTY CORPORATION, et al., Third–Party Defendants.

Bankruptcy No. 92–11243–AB.
Adv. No. 94–1422.

United States Bankruptcy Court,
E.D. Virginia,
Alexandria Division.

Oct. 3, 1995.

---

T. Farrell Egge, Egge & Associates, Alexandria, VA, for Poplar.

Dwayne L. Garrett, Poppleton, Garrett & Polott, P.C., Bethesda, MD, for Virginia Power.

Roy R. Morris, Carr, Morris & Graeff, Washington, DC, for Hallmark and South Charles.

Clifford C. Whitney III, Wallace & Whitney, P.A., Baltimore, MD, for Hallmark and South Charles.

## *MEMORANDUM OPINION*

MARTIN V.B. BOSTETTER, Jr., Bankruptcy Judge.

This proceeding requires us to determine, as a threshold matter, whether this Court has jurisdiction to hear a state-law action that the debtor commenced after the order confirming the debtor's plan had become irrevocable and after a final decree had been entered, closing this Chapter 11 case. For the reasons that follow, we conclude that we lack subject-matter jurisdiction, and accordingly, we dismiss this adversary proceeding in its entirety.

### I.

The material facts are undisputed. On March 11, 1992, the debtor, Poplar Run Five Limited Partnership ("Poplar"), filed its bankruptcy petition under Chapter 11. As of the petition date, Poplar's secured lender, Maryland National Bank (the "Bank"), held a deed of trust encumbering an office building owned by the debtor, and a security interest in the rents generated by the building.

Shortly thereafter, Poplar and the Bank entered into a cash-collateral agreement, which granted the Bank a lien on the rents that were accruing postpetition. The agreement also provided for the establishment of a cash-collateral account at the Bank, which would disburse the rents to pay the expenses of the office building.

Among the expenses incurred for the office building was the cost of electrical service. With the Bank's assistance, Poplar provided a security deposit of $34,000 to Virginia Electric and Power Company ("Virginia Power") to ensure that electrical service would continue during the course of the Chapter 11 case. See 11 U.S.C. § 366(b).[1] The deposit was funded by two checks. One check in the amount of $20,000 was drawn from the cash-collateral account at the Bank. The other check in the amount of $14,000 was drawn from Poplar's debtor-in-possession account. It is undisputed that the cash-collateral account constituted the sole source of money for Poplar's debtor-in-possession account. Accordingly, the entire sum used to fund the deposit was encumbered by the Bank's lien.

A short time later, Poplar and the Bank entered into a settlement agreement in which Poplar consented to the lifting of the automatic stay to allow the Bank to sell the property at foreclosure. Also, under this agreement, Poplar and the guarantors of Poplar's debt released the Bank and its subsidiary, South Charles Realty Corporation ("South Charles"), from all liability connected with the cash-collateral account. Settlement Agreement ¶ 11. The parties, however, conditioned the release on this Court's approval of the settlement agreement.

The settlement agreement eventually gave rise to a consent order lifting the automatic stay, which was entered by the Court in June 1992. The successful bidder at the foreclosure sale was Hallmark–Renaissance M Corporation ("Hallmark"), a wholly-owned subsidiary of the Bank. Thereafter, Virginia

---

1. Section 366(b) provides that a "utility may alter, refuse, or discontinue service if neither the trustee nor the debtor, within 20 days after the date of the order for relief, furnishes adequate assurance of payment, in the form of a deposit or other security, for service after such date. On request of a party in interest and after notice and a hearing, the court may order reasonable modification of the amount of the deposit or other security necessary to provide adequate assurance of payment."

Power opened a new electrical-service account in Hallmark's name. In a letter addressed to Virginia Power, South Charles asked that Poplar's deposit be transferred to Hallmark's account, since the deposit money had originated from the Bank. Virginia Power complied with South Charles's request, after deducting the outstanding balance owed on the debtor-in-possession account. After Hallmark sold the building to a third-party in October 1992, Virginia Power closed Hallmark's account and returned the deposit through a check dated January 6, 1993, which was jointly payable to Hallmark and South Charles.

In the meantime, Poplar filed its proposed liquidation plan. Generally, the plan provided for the full payment of administrative expenses and priority claims shortly after the plan's effective date. Pursuant to the settlement agreement, the Bank's unsecured deficiency claim was waived and released. The only other unsecured claims impaired under the plan were those held by insiders and non-insider creditors. The plan specified that no payments would be made to the insider class. As to the non-insider class, the Bank, the debtor's general partners, and the debtor's management company agreed to contribute approximately $84,000 from which a *pro rata* distribution would be made. The plan recites that such a distribution would constitute an accord and satisfaction, and would fully release Poplar and its general partners from all unsecured claims treated in the non-insider class. Plan ¶ 3.07(c). The final class treated under the plan was the allowed interests of Poplar's general and limited partners, which would receive no property. The plan did not mention that Poplar had any cause of action against Virginia Power with respect to the security deposit. As is typical with other plans, however, Poplar's plan did provide that the Court would retain jurisdiction over specified disputes, if they arose, including actions "[t]o recover all assets and property of the Debtor whether or not title is presently held in the name of the Debtor." *Id.* ¶ 9.01(c). On January 26, 1993, this Court confirmed Poplar's plan, and approved the settlement agreement reached between Poplar and the Bank.

A few months later, on May 3, 1993, Poplar moved for entry of a final decree, asserting that the plan had been "substantially consummated." Following notice and an opportunity to be heard, the Court entered a final decree on August 3, 1993, closing this Chapter 11 case. On September 29, 1994, which was more than a year after entry of the final decree, Poplar commenced this adversary proceeding against Virginia Power, seeking an award of $20,000 for Virginia Power's alleged failure to return the security deposit to Poplar. Although Poplar's complaint initially suggests that Poplar is seeking a "return" of the deposit, which is described as "property of the estate," the complaint later reveals that its claim is predicated on a breach of an "implied promise" made by Virginia Power to refund the deposit. Complaint ¶ 27. The complaint also alleges that Virginia Power was unjustly enriched when it refused to refund the deposit to Poplar. *Id.* ¶ 28.

After Poplar filed its complaint, Virginia Power impleaded Hallmark and South Charles as third-party defendants. Virginia Power and the third-party defendants then moved for summary judgment, asserting *inter alia* that the order confirming Poplar's plan barred Poplar, under the doctrine of res judicata, from pursuing its complaint. In response, Poplar cross-moved for summary judgment, arguing that the settlement agreement operated as an accord and satisfaction of the Bank's claims and thus extinguished the Bank's liens that were encumbering the security deposit. In lieu of hearing, the parties have submitted this matter on briefs. Although the parties have not addressed whether this Court has subject-matter jurisdiction to decide the merits of this dispute, it is to this threshold issue we now turn.

## II.

Like other federal courts, bankruptcy courts are courts of limited jurisdiction, *Canal Corp. v. Finnman (In re Johnson)*, 960 F.2d 396, 399 (4th Cir.1992), and as such, they "must be alert to avoid overstepping their limited grants of jurisdiction." *McCorkle v. First Pa. Banking & Trust Co.*, 459 F.2d 243, 244 n. 1 (4th Cir.1972). "At

any stage of a litigation ... subject-matter jurisdiction may be questioned. By failing to do so, the parties cannot confer jurisdiction by consent. If the court perceives the defect, it is obligated to raise the issue sua sponte." *Id.* at 244–45 n. 1; *see also* 28 U.S.C. § 157(b)(3). "It is to be presumed that a cause lies outside this limited jurisdiction, and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co.,* — U.S. —, —, 114 S.Ct. 1673, 1675, 128 L.Ed.2d 391 (1994) (citations omitted).

■ Only the Constitution and federal statutes can confer subject-matter jurisdiction on the federal courts. *Id.* The statute conferring bankruptcy jurisdiction is codified at 28 U.S.C. § 1334, and it provides *inter alia* that "the district courts shall have original and exclusive jurisdiction of all cases under title 11." *Id.* § 1334(a). The words "cases under title 11" refer merely to the bankruptcy petitions themselves. *In re Marcus Hook Dev't Park, Inc.,* 943 F.2d 261, 264 (3d Cir.1991). Because the proceeding before us involves not bankruptcy petitions, but two adversary complaints, we turn to the next portion of the statute, subsection (b), which provides as follows:

Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to a case under title 11.

28 U.S.C. § 1334(b).

■ In addition to "cases under title 11," the district courts may refer to the bankruptcy courts (1) proceedings that "arise under" the Bankruptcy Code, (2) proceedings that "arise in" a case under the Bankruptcy Code, and (3) proceedings that "relate to" a case under the Bankruptcy Code. 28 U.S.C. § 157(a).[2] But such delegation to non-Article III tribunals has its limitations. *See Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982). As non-Article III tribunals, bankruptcy courts may "hear and determine," and thus issue dispositive orders in, "all core proceedings arising under title 11, or arising in a case under title 11...." 28 U.S.C. § 157(b)(1). A bankruptcy court may not issue dispositive orders in non-core proceedings that are otherwise related to a case under title 11, unless the parties involved in the proceeding consent. *Id.* § 157(c). To determine whether the proceeding at hand falls within our "core" jurisdiction, we must address whether the proceeding "arises under" title 11, or whether it otherwise "arises in" a case under title 11.[3]

### A.

■ To determine whether a proceeding "arises under" title 11, we apply the same test used for deciding whether a civil action presents a federal question under 28 U.S.C. § 1331.[4] *See Wood v. Wood (In re Wood),* 825 F.2d 90, 96–97 (5th Cir.1987); *cf. also Christianson v. Colt Indus. Operating Corp.,* 486 U.S. 800, 808–09, 108 S.Ct. 2166, 2173–74, 100 L.Ed.2d 811 (1988). This means that "arising under" jurisdiction in bankruptcy extends to "only those cases in which a well-pleaded complaint establishes either that federal [bankruptcy] law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal [bankruptcy] law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust,* 463 U.S. 1, 27–28, 103 S.Ct. 2841, 2856, 77 L.Ed.2d 420 (1983). The proceeding at hand fails to meet this test since the original complaint purporting to invoke our jurisdiction (*i.e.,* the complaint

2. The District Court for the Eastern District of Virginia has referred all three types of proceedings to this Court by order of reference dated August 15, 1984.

3. Although the Judicial Code is not explicit on this point, we believe the term "core" refers to "arising in" and "arising under" proceedings collectively. *See* 3 David G. Epstein et al., *Bankruptcy* § 12–2, at 203 (1992).

4. The general federal-question provision, 28 U.S.C. § 1331, provides as follows: "The district courts shall have original jurisdiction of all civil actions *arising under* the Constitution, laws, or treaties of the United States." *Id.* (emphasis added).

Poplar filed against Virginia Power) asserts claims that are premised on state law, not bankruptcy law. Poplar's complaint alleges that Virginia Power breached its "implied promise" to return the security deposit to Poplar, and as a result, Virginia Power was "unjustly enriched." The complaint thus asserts claims based on breach of contract and unjust enrichment, which involve pure questions of state law, not federal law.

To be sure, Poplar's complaint initially suggests that Poplar is seeking a "return" of "property of the estate," which implies that Poplar is pursuing a turnover action under the Bankruptcy Code. But the bankruptcy provisions addressing turnover require that the property be delivered to either the trustee or debtor-in-possession—in other words, the party administering the estate. *See* 11 U.S.C. § 542(a), 543(b)(1). In this instance, the estate ceased to exist upon plan confirmation, and all estate property not otherwise transferred under the plan reverted to the debtor. *See id.* § 1141(b). There is no estate that can receive the "estate" property allegedly held by Virginia Power, and accordingly, §§ 542 and 543 are causes of action unavailable to Poplar. *See Venn v. Kinjite Motors, Inc. (In re WMR Enter., Inc.),* 163 B.R. 887, 889 (Bankr.N.D.Fla. 1994).

In its cross-motion for summary judgment, Poplar argues that the settlement agreement operated as an accord and satisfaction of the Bank's claim, and this had the effect of extinguishing the Bank's liens that were encumbering the deposit. It is undisputed that the settlement agreement was an important component of Poplar's liquidation plan. Indeed, our order confirming the plan also approved the settlement agreement. It could be argued that to the extent the instant proceeding requires us to interpret the settlement agreement, such an interpretation would present a federal question, since the agreement was so closely tied to plan confirmation. Such an argument, however, misapprehends the nature of Chapter 11 plans and, by extension, agreements that are connected with Chapter 11 plans. "Because of a plan's likeness to a consent decree, a chapter 11 plan should generally be interpreted as if it

were a contract." *C.F. Brookside, Ltd. v. Skyview Memorial Lawn Cemetery (In re Affordable Hous. Dev't Corp.),* 175 B.R. 324, 329 (9th Cir. BAP 1994). Moreover, "[t]he law of the state in which the plan was confirmed governs its interpretation." *Id.* Accordingly, interpretation of either the plan or the settlement agreement would present questions of state law, not federal law. We therefore conclude that this proceeding fails to present a substantial question of federal law that would support "arising under" jurisdiction.

Virginia Power and the third-party defendants assert that under the doctrine of res judicata, the order confirming Poplar's liquidation plan bars Poplar from asserting its claim. An order of confirmation is a federal judgment, and accordingly, its preclusive effect is governed by federal law. *See Robi v. Five Platters, Inc.,* 838 F.2d 318, 322 (9th Cir.1988). But an affirmative defense, such as res judicata, that is governed by federal law does not create a federal question that can support "arising under" jurisdiction. Under the well-pleaded complaint rule, "arising under" jurisdiction is determined only by reference to the claims set forth in the plaintiff's complaint. *See Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 2429–30, 96 L.Ed.2d 318 (1987). Furthermore, a federal defense cannot invoke "arising under" jurisdiction, "even if the defense is anticipated in the plaintiff's complaint, and even if both parties admit that the defense is the only question truly at issue in the case." *Franchise Tax Bd.,* 463 U.S. at 14, 103 S.Ct. at 2848. Accordingly, under the well-pleaded complaint rule, the affirmative defense of res judicata, which in this instance is governed by federal law, is not sufficient to support "arising under" jurisdiction. *See Anziulewicz v. Bluefield Community Hosp.,* 531 F.Supp. 49, 53 (S.D.W.Va. 1981).

### B.

This, however, does not end the analysis. Simply because the proceeding presents questions of state law does not necessarily mean that the proceeding is "non-core" or otherwise beyond the jurisdiction of

the bankruptcy courts. *See* 28 U.S.C. § 157(b)(3) ("A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."). A proceeding that involves state-law questions may still fall within the "core" jurisdiction of this Court if it "arises in" a case under title 11. "A proceeding 'arises in' a Chapter 11 case when it is not based on any right expressly created by Title 11 but would have no practical existence but for the bankruptcy." *In re A.H. Robins Co.*, 182 B.R. 128, 132 (Bankr.E.D.Va.1995) (internal quotation marks omitted). One example of a proceeding "arising in" a bankruptcy case is a matter involving the allowance or disallowance of claims. The Bankruptcy Code requires a creditor to file a proof of claim as the first step for receiving a distribution from the estate. *See* 11 U.S.C. §§ 501, 502(a). Although the Bankruptcy Code authorizes such filing, the issue of whether the claim is bona fide, and thus allowable, may ultimately turn on state law. *Cf. Wood*, 825 F.2d at 97–98.[5]

■ The administration of estate property, such as postpetition accounts receivables, may also fall within the ambit of "arising in" jurisdiction. Some courts have held that actions commenced by a debtor or a trustee to collect on a postpetition contract are "core" proceedings, or stated another way, matters "arising in" a bankruptcy case. *See, e.g., Olympia & York Fla. Equity Corp. v. Bank of New York (In re Holywell Corp.)*, 913 F.2d 873, 881 (11th Cir.1990); *Arnold Print Works, Inc. v. Apkin (In re Arnold Print Works, Inc.)*, 815 F.2d 165, 168 (1st Cir.1987). These courts have reasoned that a postpetition receivable is an asset of the bankruptcy estate, and accordingly, the efforts to collect the receivable are matters concerning the administration of the estate, or matters affecting the implementation of a confirmed Chapter 11 plan. *See, e.g., Holywell Corp.*, 913 F.2d at 881. These courts have also distinguished postpetition contracts disputes from the situation presented in *Northern*

*Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), which involved an action commenced by the debtor to collect on a prepetition contract. *See, e.g., Arnold Print Works, Inc.*, 815 F.2d at 165–66.

■ Relying on the "but for" test described in *A.H. Robins Co., supra*, one could argue that unlike disputes involving prepetition contracts, disputes involving postpetition contracts are matters "arising in" a bankruptcy case because they would not have ensued, but for the fact that the trustee or debtor-in-possession entered into the contract. The same argument applies to the case at hand; one could argue that the underlying dispute would not have occurred but for the fact that Poplar, as debtor-in-possession, posted a security deposit under 11 U.S.C. § 366(b) in order to continue receiving electricity from Virginia Power. This supposedly led to Virginia Power's "implied promise" to refund the deposit to Poplar, a promise that Virginia Power allegedly breached.

■ Although at first glance this argument appears to be a tenable way for finding "arising in" jurisdiction, the problem with the "but for" test, as expressed in *A.H. Robins Co., supra*, is that it is over-inclusive. At its fullest breadth, the "but for" test would allow a plaintiff to invoke the core jurisdiction of a bankruptcy court by simply tracing the origins of the dispute to a prior bankruptcy. Such an outcome would extend the grasp of "arising in" jurisdiction beyond the boundaries of non-core "related to" jurisdiction, a concept addressed below. To be sure, there may be sufficient grounds for viewing the collection of a postpetition receivable as an "arising in" proceeding, so long as the bankruptcy case remains open to administer the asset or to implement the plan. But here, Poplar commenced this proceeding after the estate dissolved, after the impaired creditors released their claims, and after a final decree was entered, closing Poplar's case. For

---

5.  Similarly, we determined in *LCS Homes, Inc. v. Driggs Bldg. Sys., Inc. (In re LCS Homes, Inc.)*, 103 B.R. 736 (Bankr.E.D.Va.1989) that a debtor's action for breach of contract and for declaratory judgment was a core proceeding, inasmuch

as it was closely tied to the claims asserted by the defendant-creditors, and thus pertained to the allowance and disallowance of claims and to the administration of the estate. *Id.* at 742.

these reasons, we conclude that a proceeding cannot "arise in" a bankruptcy case when it does not fall within the definition of a "related to" proceeding, the type of proceeding that we consider next. *See Michigan Employment Sec. Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.),* 930 F.2d 1132, 1141 (6th Cir.1991) (holding that, since proceedings "arising under," "arising in," and "related to" operate "conjunctively to define the scope of jurisdiction," the courts need only consider "whether a matter is at least 'related to' the bankruptcy"), *cert. dismissed,* 503 U.S. 978, 112 S.Ct. 1605, 118 L.Ed.2d 317 (1992); *accord Marcus Hook Dev't Park, Inc.,* 943 F.2d at 264.

## C.

■■■■ "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options or freedom of action (either positively or negatively) *and* which in any way impacts upon the handling and administration of the bankrupt estate." *A.H. Robins Co. v. Piccinin,* 788 F.2d 994, 1002 n. 11 (4th Cir.) (quoting *Pacor v. Higgins,* 743 F.2d 984, 994 (3d Cir.1984)) (emphasis added), *cert. denied,* 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). This definition of "related to" jurisdiction is expansive but not limitless. *Celotex Corp. v. Edwards,* —— U.S. ——, ——, 115 S.Ct. 1493, 1499, 131 L.Ed.2d 403 (1995). In this instance, "related to" jurisdiction fails to reach the proceeding at hand because the outcome of this proceeding will have no impact on the estate's handling or administration. When we confirmed Poplar's liquidation plan, the estate ceased to exist and the parties became bound to the plan's provisions. *See* 11 U.S.C. § 1141. The plan provided that the priority and administrative claims would be paid in full, and it further provided that the unsecured claims held by non-insiders would be released upon payment of a *pro rata* distribution. Poplar's partners and insiders

were to receive no payments or property under the confirmed plan. Following confirmation, Poplar moved for entry of a final decree, implying that the estate had been fully administered.[6] *See* Fed.R.Bankr.P. 3022. Under these circumstances, we conclude that any recovery obtained by Poplar in this proceeding would neither enlarge the estate nor benefit the unsecured creditors, inasmuch as this bankruptcy has already been wound up.

Poplar suggests that it "overlooked" the security deposit, and it was unaware that South Charles had asked Virginia Power to transfer the deposit to Hallmark's account. On this basis, it could be argued that Poplar's breach-of-contract action was an "undisclosed" asset of the estate, and consequently, the case should be reopened to administer the asset. Yet, the problem here is that the asset cannot be administered without changing the provisions of the plan. As mentioned before, the plan provided that impaired claims or interests would receive no payment, or they would be released upon payment of a *pro rata* distribution. For the proceeding to have any impact on the estate, Poplar would have to modify the plan to enable creditors to share in any recovery realized in this proceeding. Poplar has not taken any steps to reopen its case in order to modify its plan. Nor do we believe that such an avenue is available, as explained more fully below.

■■■ To modify the plan, Poplar would have to follow the procedures specified in 11 U.S.C. § 1127(b), or it would have to prove that the order confirming its plan should be revoked under 11 U.S.C. § 1144. Neither avenue is available. Poplar cannot modify its plan because (as it stated in its motion for entry of a final decree) the plan has been "substantially consummated." *See id.* § 1127(b). Moreover, with respect to revok-

---

6. In its Application for Entry of Final Decree, Poplar asserted that its plan had been "substantially consummated." Application ¶ 6. But in the context of a liquidation plan that provided for a one-time payment of approximately $84,000 to impaired creditors, the difference between "substantially consummated" and "fully administered" may be a matter of semantics. Rule 3022

provides that a court "shall enter a final decree" when the Chapter 11 estate has been "fully administered." Fed.R.Bankr.P. 3022; *see also In re Bankeast Corp.,* 132 B.R. 665, 668 (Bankr. D.N.H.1991) (deeming an estate to be "fully administered" upon substantial consummation, as defined by 11 U.S.C. § 1101(2)).

ing the confirmation order, we observe that a confirmation order becomes irrevocable 180 days after its entry. *See* 11 U.S.C. § 1144; *cf. also Zerand–Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir.1994). In this instance, the 180–day limitations period has elapsed. Because the plan's provisions would not permit creditors to share in any recovery, this proceeding will have no impact on the estate's handling or administration, and accordingly, this proceeding cannot fall within the ambit of "related to" jurisdiction.

■ Our conclusion is consistent with other decisions holding that jurisdiction over a Chapter 11 case is foreclosed upon entry of a final decree. *E.g., Walnut Assocs. v. Saidel*, 164 B.R. 487, 492 (E.D.Pa.1994) ("[B]ankruptcy courts retain jurisdiction over the post-confirmation administration of the estate until the entry of a final decree."). It is generally accepted that, following confirmation, bankruptcy courts retain some measure of jurisdiction, albeit diminished, to enforce their orders, to allow the plan to be modified, and to ensure that the plan is implemented. *See* 11 U.S.C. § 1142; *Goodman v. Phillip R. Curtis Enter., Inc. (In re Goodman)*, 809 F.2d 228, 232 (4th Cir.1987); *In re Jankins*, 184 B.R. 488, 492 (Bankr. E.D.Va.1995). As noted in one decision, "courts have recognized the competing interests between retaining jurisdiction after confirmation *until entry of the final decree* ... and ending the 'tutelage' status of reorganization, a period 'which may limit and hamper [the corporation's] activities and throw doubt upon its responsibility.' " *In re Cinderella Clothing Indus., Inc.*, 93 B.R. 373, 376 (Bankr.E.D.Pa.1988) (quoting *North Am. Car Corp. v. Peerless Weighing & Vending Mach. Corp.*, 143 F.2d 938, 940 (2d Cir.1944)) (emphasis added). In this instance, the plan has been implemented and a final decree has been entered. Poplar's action will have no impact on its former estate, and accordingly, it is not a proceeding "related to" the bankruptcy case. *Cf. Lux v. Spotswood Constr. Loans*, 176 B.R. 416, 418–19 (E.D.Va.1993) (holding that court lacked jurisdiction over debtors' suit that asserted violations of the automatic stay when outcome of suit would not affect closed Chapter 7 case), *aff'd per curiam*, 43 F.3d 1467 (4th Cir.1994) (unpub-

lished disposition); *Cook v. Chrysler Credit Corp.*, 174 B.R. 321, 327 (M.D.Ala.1994) (concluding that there was no "related to" jurisdiction over claims when the bankruptcy case was closed).

■ Poplar's plan provided that the Court would retain jurisdiction over specified disputes, including actions "[t]o recover all assets and property of the Debtor whether or not title is presently held in the name of the Debtor." Plan ¶ 9.01(c). Nevertheless, we are not persuaded that this retained jurisdiction clause grants us power to decide the merits of the dispute at hand. Generally, "[a] court cannot write its own jurisdictional ticket." *Zerand–Bernal Group, Inc.*, 23 F.3d at 164. Nor can the parties confer subject-matter jurisdiction on the courts when jurisdiction is not available in the first instance. *See Ford v. Hamilton Inv., Inc.*, 29 F.3d 255, 257 (6th Cir.1994); *Portfolio Lease Funding Corp., No. 1 v. Seagate Technology, Inc. (In re Atlantic Computer Sys., Inc.)*, 163 B.R. 704, 707 (Bankr.S.D.N.Y.1994). Consequently, a retained jurisdiction clause cannot grant subject-matter jurisdiction over a proceeding when the proceeding itself is already outside the jurisdictional boundaries defined by statute. *See, e.g., Walnut Assocs.*, 164 B.R. at 494–95; *Atlantic Computer Sys., Inc.*, 163 B.R. at 707.

■ A court does, however, have jurisdiction to enforce its own orders under the doctrine of ancillary jurisdiction. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 239, 54 S.Ct. 695, 696–97, 78 L.Ed. 1230 (1934). Furthermore, a court possesses ancillary jurisdiction to interpret or enforce a settlement agreement when the order provides that jurisdiction will be retained over the agreement itself, or when the terms of the agreement are incorporated into the order. *See Kokkonen*, —— U.S. at ——, 114 S.Ct. at 1677. The underlying theory is that, if the court's order retains jurisdiction, or if the agreement's terms are incorporated into the order, a breach of the agreement will constitute a violation of the order, which will invoke the court's power to "protect its proceedings and vindicate its authority." *Id.* at ——, 114 S.Ct. at 1676–77. Although Poplar's com-

plaint seeks to establish liability based on an alleged breach of an "implied promise," Poplar contends in its summary-judgment brief that the settlement agreement between itself and the Bank operated as an accord and satisfaction of the Bank's claims, and thus extinguished the liens that were encumbering the security deposit. Poplar asserts that the settlement agreement was breached when the Bank's subsidiaries, South Charles and Hallmark, received the deposit refund.

■ The order confirming Poplar's plan mentioned and approved the settlement agreement. Even if this is sufficient to incorporate the agreement's terms into the confirmation order, we conclude that ancillary jurisdiction still cannot be invoked for two reasons. First, there are strong arguments supporting the view that the courts may exercise ancillary jurisdiction and a related form, pendent jurisdiction, only when they are granted by statute. *See Finley v. United States*, 490 U.S. 545, 548, 109 S.Ct. 2003, 2006, 104 L.Ed.2d 593 (1989) ("The Constitution must have given to the court the capacity to take [jurisdiction], *and an act of Congress must have supplied it. . . .* To the extent that such action is not taken, the power lies dormant." (quoting *The Mayor v. Cooper*, 6 Wall. 247, 252, 18 L.Ed. 851 (1868))); *see also* 28 U.S.C. § 1367(a) (granting "supplemental jurisdiction"—the collective term for ancillary and pendent jurisdiction—over claims that are "so related to" actions within the district court's original jurisdiction). It has been asserted that Congress granted ancillary jurisdiction to the bankruptcy courts through the "related to" language contained in 28 U.S.C. § 1334(b). *See generally* Susan Block–Lieb, *The Case Against Supplemental Bankruptcy Jurisdiction: A Constitutional, Statutory, and Policy Analysis*, 62 Fordham L.Rev. 721 (1994). Since we have already determined that we lack "related to" jurisdiction to hear the merits of this dispute, it follows that we also lack ancillary jurisdiction to "enforce" a confirmation order in a Chapter 11 case that has been wound up. *See also Zerand–Bernal Group, Inc. v. Cox (In re Cary Metal Prods., Inc.)*, 158 B.R. 459, 464 (N.D.Ill.1993) ("[I]f the underlying main bankruptcy case is closed, the general rule is that the bankruptcy court

will not exercise ancillary jurisdiction."), *aff'd on other grounds*, 23 F.3d 159 (7th Cir.1994).

■ Second, "[a]ncillary jurisdiction is applied only in unusual circumstances and is strictly limited to cases where a non-bankruptcy forum cannot provide adequate relief or where other equitable factors require the bankruptcy court to exercise ancillary jurisdiction." *Id.* at 464–65 (citing *Local Loan Co.*, 292 U.S. at 239, 54 S.Ct. at 696–97). There is nothing before us indicating that the state courts will be unable to provide adequate relief. The questions raised here, concerning contract rights and accord and satisfaction, turn on state law, not federal law. As mentioned before, Virginia Power and the third-party defendants, Hallmark and South Charles, have asserted res judicata as an affirmative defense, which is governed by federal law. But we cannot conclude that federal res judicata principles are beyond the capacity of the state courts. The important point is that the outcome of this dispute will not affect the bankruptcy estate. This is a two-party dispute between a former debtor and Virginia Power, accompanied with a third-party action against Hallmark and South Charles. Because the federal interest here is minimal at best, we see no basis for exercising ancillary jurisdiction over this dispute.

■ Although the discussion above has focused on whether the Court has jurisdiction over Poplar's complaint, the analysis applies with equal force to Virginia Power's third-party action. Virginia Power's third-party complaint seeks a judgment against South Charles and Hallmark (in the event that Poplar prevails on its claim) on grounds that South Charles and Hallmark were unjustly enriched when they received the deposit refund. Similar to Poplar's complaint, Virginia Power's complaint fails to present a substantial federal question. Additionally, for the reasons stated above, any recovery obtained by Virginia Power will have no impact on Poplar's former bankruptcy estate. Consequently, Virginia Power's third-party action neither "arises in" nor "relates to" Poplar's bankruptcy case. Because there is no jurisdictional basis for either Poplar's

complaint or Virginia Power's third-party complaint, we dismiss this proceeding in its entirety. Our decision to dismiss should not be construed as expressing an opinion as to the merits herein. We simply hold that we are without jurisdiction to reach the merits of this dispute.

## III.

For the foregoing reasons, this adversary proceeding is dismissed for want of subject-matter jurisdiction. An appropriate order dismissing this proceeding will be entered.